Donna HOEPPNER, Plaintiff–Appellant,

v.

**CROTCHED MOUNTAIN REHA-BILITATION CENTER, INC.,**
Defendant–Appellee.

No. 93–2201.

United States Court of Appeals,
First Circuit.

Heard April 4, 1994.

Decided Aug. 3, 1994.

Vincent C. Martina, Amherst, NH, for appellant.

James W. Donchess, with whom Wiggin & Nourie P.A., Manchester, NH, was on brief, for appellee.

Before TORRUELLA, CYR and BOUDIN, Circuit Judges.

TORRUELLA, Circuit Judge.

This action involves a retaliatory discharge claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Plaintiff–Appellant, Donna Hoeppner, alleges that she was fired because she reported several incidents of sexual harassment to her employer. The district court granted summary judgment in favor of Hoeppner's employer and we affirm.

## I. BACKGROUND

Defendant–Appellee, Crotched Mountain Rehabilitation Center, Inc. ("CMRC"), is a nonprofit school for the instruction and rehabilitation of multiply handicapped children and young adults. Hoeppner was employed as a special education teacher at CMRC from September 1989 until November 9, 1990. Hoeppner was in charge of a classroom at the school throughout her term of employment. She was aided by several teacher assistants ("TAs"), who normally rotated through different classrooms over periods of three to six months.

Beginning in December of 1989, several TAs complained to CMRC administrators about Hoeppner's management of her classroom and about Hoeppner's poor communication with, and supervision of, the TAs. Hoeppner contests the validity and genuineness of some of these complaints, and questions the existence of others, but does not dispute that some complaints were made about her

prior to her discharge and prior to her report of sexual harassment. There is also no dispute that CMRC placed Hoeppner on probation for ninety days in August of 1990. Subsequently, on November 1, 1990, Hoeppner reported several incidents of sexual harassment by one of her TAs. On November 9, 1990, three days after the expiration of her probationary period, CMRC discharged Hoeppner on the ground that Hoeppner had allegedly failed to make suggested improvements in her classroom during the probationary period. Hoeppner maintains that this ground is merely a pretext for the real reason underlying her termination: Hoeppner's report of sexual harassment. Before we address whether this allegation can survive summary judgment, we briefly recount the evidence concerning these events in more detail.

CMRC's Principal, Barbara Cohen, and its Assistant Principal, Archibald Campbell, state in affidavits that they received complaints about Hoeppner's supervision of her classroom on several occasions. Cohen attests that in December of 1989, she met with Hoeppner's TAs to discuss problems between the TAs and Hoeppner. Cohen claims that TAs Diana Vélez and Jennifer Roy complained to her in January about the way Hoeppner was treating them in the classroom.

A meeting between Hoeppner, Cohen, and Hoeppner's TAs was held on January 20, 1990. Cohen maintains that the meeting was specifically scheduled for the purpose of discussing the TAs' concerns about Hoeppner. In her affidavit, Hoeppner claims that the meeting was a routine afterschool discussion of classroom matters at which Cohen solicited corrective suggestions from the TAs. Even according to Hoeppner's account, however, the TAs "talked basically at me" and TA Vélez stated at the meeting that Hoeppner was not providing Vélez with sufficient feedback.

Hoeppner's first performance evaluation for the period of September 11, 1989, through December 11, 1989, was completed on February 12, 1990. Cohen met with Hoeppner on February 24 to discuss the evaluation. The evaluation rated Hoeppner's over-

all performance as fully satisfactory, although it noted several problems with her classroom management abilities. Under a category entitled "Developing and Motivating Subordinates," for example, the evaluation stated that Hoeppner's "personal relationships with teacher assistants have been strained" and that Hoeppner needed to be more open to input from the TAs. Hoeppner signed the evaluation and remembers discussing it with Cohen. She alleges, however, that the negative comments were untrue and fabricated.

Meanwhile, Assistant Principal Campbell claims that TAs Heidi Beetcher and James LaBelle complained sometime in July of 1990 about the way Hoeppner was treating them. Campbell and Cohen subsequently scheduled a meeting for July 31, 1990, to discuss the problems. Sometime prior to this meeting, Hoeppner alleges that she reported both Beetcher and LaBelle to CMRC for a variety of inappropriate conduct, including physical abuse of students, administering unauthorized medications, and tardiness.

The July 31 meeting was attended by Cohen, Campbell, Hoeppner, and TAs Beetcher and LaBelle. Cohen wrote an extensive memorandum documenting her version of the various complaints about Hoeppner that were raised at the meeting. Cohen concluded in the memorandum that Hoeppner "had repeated problems properly supervising and communicating with her staff.... As a result ... her performance as a teacher and as a classroom supervisor is inadequate." Hoeppner does not dispute Cohen's account of the meeting, nor does she dispute that Beetcher and LaBelle complained about her supervision of the classroom. Rather, Hoeppner alleges that Beetcher and LaBelle fabricated their complaints in retaliation for Hoeppner's prior act of reporting the two TAs to CMRC administrators for misconduct and abusing students.

CMRC placed Hoeppner on probation on August 8, 1990. Cohen met with Hoeppner the next day to discuss the reasons for the probation and the applicable terms and consequences of the ninety-day probationary period. At the meeting, Cohen presented Hoeppner with the "Disciplinary Action Form" documenting the probation. The form states that the probation resulted from Hoeppner's failure to properly supervise and communicate with her TAs. The form also listed five changes involving Hoeppner's classroom management practices that "must be made" by Hoeppner to improve her behavior. The form concluded with the statement: "If behavior does not improve, further disciplinary action may/will be taken: Up to and including termination." Hoeppner signed the form but did not write anything in the space for employee comments. Hoeppner objects to the validity of the assertions contained in the form and alleges that CMRC placed her on probation as a threat to stop Hoeppner from reporting abuse of students and otherwise "making waves" at the school.

Cohen states in her affidavit that Hoeppner's performance did not improve during the probationary period. She states that another TA, Pam Flannery, complained to her about Hoeppner's classroom management and supervision on October, 31, 1990. Flannery signed a statement containing the details of her complaints, including allegations that Hoeppner's intimate relationship with another one of her TAs, Glenn Loucks, now espoused to Hoeppner, was causing trouble in the classroom. Cohen states that Flannery indicated that the classroom was in chaos. Hoeppner claims that the CMRC administration solicited Flannery's statement while it was pressuring Flannery to stay away from the union which Glenn Loucks and others were trying to organize at CMRC. Hoeppner alleges that Flannery signed the statement to save her job and the statement is thus of dubious validity. Mark Pierce, a Residential Counselor at CMRC, makes the same allegation as Hoeppner in his affidavit.[1]

---

1. According to Hoeppner, Flannery's statement is allegedly contradicted by a subsequent October 9, 1992 letter by Flannery denying that the alleged incidents of sexual harassment had occurred in Hoeppner's classroom. In the October 9 letter, Flannery does state that "we all worked very well together" in the classroom, however, she also states in the same letter that the relationship between Loucks and Hoeppner "was causing friction and tension in [Hoeppner's]

Meanwhile, CMRC Education Staff Development Chair, Pamela Shea, states in an affidavit that she spoke with Hoeppner in early November (Cohen indicates that Shea informed her of this conversation on November 1) and determined that the situation in Hoeppner's classroom was chaotic and out of control.

On November 1, 1990, Hoeppner first reported several incidents of sexual harassment to CMRC. Hoeppner informed Assistant Principal Campbell that one of her TAs, Shane Waters, had made several sexually inappropriate overtures toward her, including touching her breasts from behind, placing his crotch three inches from her face, and rubbing her back. Campbell and Cohen spoke with Waters on several occasions between November 2 and November 5, 1992. Waters gave a somewhat different account of the incidents and denied that any of his actions had sexual connotations. Campbell and Cohen told Waters that sexual harassment was not acceptable and that Waters should not do anything that could be interpreted by Hoeppner as sexual harassment. Neither Cohen nor Campbell took any administrative action against Waters nor did they conduct any further investigation of the incident beyond their conversations with Waters. Hoeppner claims that despite promising a full investigation, the CMRC administration did nothing and never informed her of what they would do, or had done, about the incidents.

CMRC discharged Hoeppner on November 9, 1990, three days after her probationary period ended and eight days after she reported the incidents of sexual harassment. According to the final performance evaluation written by Cohen upon Hoeppner's discharge, Hoeppner continued to have problems with her staff and did not improve her supervision and management of the classroom, as required by the terms of Hoeppner's probation. In deposition testimony, Hoeppner stated that she did not change her behavior in response to the criticisms leveled by Cohen in the Disciplinary Action Form

accompanying Hoeppner's probation because Hoeppner did not feel that the criticisms were valid. Hoeppner does claim, however, that she did make changes in response to the particular needs of individual TAs and that, in general, she did improve her performance.

Hoeppner maintains that there were no significant problems in her classroom and asserts that the criticisms and complaints against her were untrue and fabricated. She proffered affidavits of several current and former employees of CMRC who attest to Hoeppner's good teaching and supervisory abilities and who assert that Hoeppner did not have any problems with the staff in her classroom. Hoeppner also points out that neither of her supervisors, Cohen and Campbell, formally observed Hoeppner's work in the classroom. CMRC's motive for fabricating the complaints against her, Hoeppner claims, was to implicitly threaten her job so that Hoeppner would stop "making waves" at CMRC by reporting incidents of abuse of students, by reporting misconduct of other employees, and by supporting the efforts to organize a union at CMRC led by Glenn Loucks. Several current and past employees assert in their affidavits that CMRC was trying to keep its employees quiet about incidents of student abuse so that the incidents could be hidden from the state regulators and from the public, thus avoiding the tarnishing of CMRC's reputation. Several affiants make similar accusations regarding CMRC's efforts to discourage unionization at the school. One affiant claims that CMRC's method of silencing employees was to falsify complaints against them and then threaten to fire them.

The district court rejected Hoeppner's claim and dismissed the case on summary judgment. The court found no triable issue on the question of whether CMRC wrongfully discharged Hoeppner because CMRC "reasonably and justifiably concluded that there was a problem in plaintiff's classroom." The court also noted that the complaints against Hoeppner were made well before she reported the incidents of sexual harassment,

staff." We see no contradiction between Flannery's signed statement and her subsequent letter.

so these complaints could not have been a fabricated pretext to cover up a retaliatory motive. Consequently, the court found no evidence of a causal relationship between the protected activity of reporting sexual harassment and Hoeppner's discharge.

## II. ANALYSIS

To establish a claim of retaliatory discharge under Title VII, Hoeppner must show by a preponderance of the evidence that: (1) she engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the discharge. *Ramos v. Roche Products, Inc.,* 936 F.2d 43, 48 (1st Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992). Because reporting sexual harassment is a protected activity under Title VII, *Morgan v. Massachusetts General Hospital,* 901 F.2d 186, 194 (1st Cir.1990), and because Hoeppner was discharged after she reported the incidents of sexual harassment by Waters, there is no dispute that Hoeppner has established the first two elements of her retaliatory discharge claim. The issue on appeal is whether, as the district court found, Hoeppner failed to present sufficient evidence of a causal link between her sexual harassment report and the subsequent discharge to defeat a motion for summary judgment. To put it another way, the issue is whether the evidence in the record can show that CMRC's true reason or motive for firing Hoeppner was Hoeppner's report of sexual harassment.

Because we are reviewing an order of summary judgment, we must determine whether the pleadings, depositions, answers to interrogatories and affidavits offered in this case, viewed in the light most favorable to the nonmovant, Hoeppner, present a genuine issue of material fact regarding the existence of a causal connection between Hoeppner's sexual harassment report and her subsequent discharge. Fed.R.Civ.P. 56(c); *Serrano–Perez v. FMC Corp.,* 985 F.2d 625, 626 (1st Cir.1993); *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988).

Under the summary judgment standard, an issue is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Oliver,* 846 F.2d at 105 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Although the party opposing the motion for summary judgment benefits from all reasonable inferences favorable to that party, the nonmovant "may not rest upon mere allegations; [he] must set forth specific facts demonstrating that there is a genuine issue for trial." *Id.* Even in discriminatory discharge cases, where the plaintiff can rarely present direct, subjective evidence of an employer's actual motive, the plaintiff cannot survive summary judgment with "unsupported allegations and speculations," but rather must "point to specific facts detailed in affidavits and depositions— that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988).

Hoeppner claims on appeal that she presented sufficient evidence to create a genuine issue of material fact as to whether CMRC fabricated the alleged complaints against Hoeppner so that they could be used as a pretext for Hoeppner's later discharge, which was ultimately caused by the sexual harassment report. Hoeppner acknowledges that the complaints against her and her subsequent probation preceded her report of sexual harassment to CMRC. She argues, however, that CMRC fabricated the complaints and placed her on probation in order to discourage her from reporting staff abuse of students, supporting Loucks' union efforts, and otherwise "making waves" at CMRC. Instead of remaining silent, Hoeppner ignored the implicit threats by CMRC and reported her TA for sexual harassment. As a result, Hoeppner concludes, her sexual harassment complaint, though maybe not the sole reason for her discharge, was a "significant and final reason" for her discharge.

Under Hoeppner's theory of the causal connection required under Title VII, Hoeppner would not have been fired but for her sexual harassment report because she defied

CMRC's implicit threats to remain quiet only at the point when she reported the incidents involving Waters. Had she not reported the incidents of sexual harassment, Hoeppner maintains, she would not have been discharged because CMRC administrators would have concluded that Hoeppner had ceased to "make waves" in response to their threats against her.

Our review of the record convinces us that Hoeppner has failed to present sufficient evidence to support her theory of the causal connection between her report and her subsequent discharge. Consequently, no genuine issue of material fact remains for trial. Hoeppner's "evidence" consists mainly of unsupported allegations without any "specific facts" such as "names, dates, incidents, and supporting testimony." *Lipsett*, 864 F.2d at 895. Specific facts are absent to support several crucial links along Hoeppner's alleged chain of causality: (1) that CMRC had a practice of implicitly threatening teachers with fabricated negative teacher evaluations in order to cover up abuse of students at the school; (2) that CMRC's practice of silencing teachers to cover up student abuse extended to the general practice of threatening teachers who were "making waves" by taking actions such as reporting incidents of sexual harassment; and (3) that CMRC's alleged practice of threatening teachers through fabricated complaints was instituted against Hoeppner herself, resulting in Hoeppner's discharge after she made the sexual harassment report. Because all these links are crucial to the third element in Hoeppner's Title VII cause of action, her failure to establish any one of them dooms her objection to CMRC's motion for summary judgment. *See, e.g., Ramos*, 936 F.2d at 49 (noting that plaintiff's "accusations remain largely conclusory and lacking in the concrete documentation necessary to prove the causal link between her protected activity and her retaliatory treatment").

1. Regarding the first causal link, Hoeppner presented evidence showing that CMRC had problems with the mistreatment and abuse of students by staff members. There is also some evidence, although perhaps little more than a scintilla, that CMRC was trying to hide the incidents of abuse and mistreatment from the public, either to maintain its reputation or to avoid state regulators. Hoeppner's further claim that CMRC fabricated complaints against teachers who reported abuse of students in an effort to silence them, however, is supported by nothing more than unsubstantiated allegations. Hoeppner and Holly Brown, a staff psychologist at CMRC, both make assertions regarding CMRC's alleged silencing practice without noting any specific names, dates or incidents. Glenn Loucks claims in his affidavit that sometime in November of 1990, "after attempting to talk to a social worker from the state of Mass. for student P.C., Barbara Cohen told me that I would be fired for reporting child abuse to a state agency. That I had to follow [CMRC] policy and that meant not breaking client confidentiality to any state agency. [sic]" Loucks' statement might amount to some evidence of CMRC's practice of silencing employees except for the fact that Loucks states in the next paragraph of his affidavit that he did in fact report a case of child abuse to the New Hampshire Department of Children and Youth Service and yet he makes no claim that CMRC took any actions against him as a result. More importantly, Loucks' allegation does not support the claim that CMRC administrators fabricated complaints against teachers to keep them quiet. He makes no mention of fabrication or threats to fabricate complaints in his affidavit.

Dr. Robert Grassi, CMRC's Clinical Director, states in deposition testimony that CMRC's past Director of Psychology, Marilyn Russell, was discharged because she reported incidents of child abuse directly to state authorities in violation of CMRC policy. Although this is the type of "incident" that might normally raise a triable issue of fact as to an established practice of CMRC, the practice is not one which involves fabricating teacher complaints to implicitly threaten teachers to keep quiet. No allegations are made that CMRC fabricated complaints against Russell. The problem with the "evidence" from Grassi's testimony is that it provides no details of the alleged retaliatory discharge of Russell—nor does Hoeppner offer any evidence from the people involved in

the incident, including Russell herself—that would enable a reasonable jury to determine if it is the type of occurrence that is consistent with the alleged practice by CMRC to fabricate false complaints against teachers to prevent them from reporting abuse of students. Grassi himself does not explain how he discovered the reasons for Russell's discharge and, indeed, states that he does not remember talking about these reasons when he spoke with Russell at the time of the alleged incident.

2. Even if Hoeppner had provided sufficient evidence to show that CMRC had a practice of fabricating complaints against teachers to discourage them from reporting student abuse, Hoeppner has still failed to establish a second crucial link in the chain connecting her discharge to the sexual harassment report: that CMRC's concern with staff reports of student abuse to outside parties extended to a concern with the types of staff actions that Hoeppner engaged in, such as filing a sexual harassment report and reporting two of her TAs for misconduct. In other words, Hoeppner has not established that she did anything that would cause CMRC to fabricate complaints against her.

Aside from the incidents reported by Hoeppner in this case, there is nothing in the record regarding any previous or subsequent complaints of sexual harassment filed by a CMRC employee, or regarding CMRC's retaliation, or threat to retaliate, against other employees who might have complained about sexual harassment. Thus, Hoeppner has presented no evidence that an internal sexual harassment report would qualify as the type of conduct CMRC administrators would consider "making waves" or the type of action that would induce CMRC to retaliate.

█ The closest thing to "evidence" concerning this issue is an affidavit by August Tardiff, a teacher at CMRC, who claims that in March of 1993, he reported to CMRC administrators that he felt physically threatened by one of his TAs. Although the TA was temporarily removed from Tardiff's room, Tardiff claims that the administrators "refused to take my fears seriously [and] told me I did not have a choice that I had to work with this man or leave. They also gave me a

disciplinary action in which they blamed me for the problem. So I gave my resignation on April 12 to be effective on June 30th." This single incident, occurring nearly three years after Hoeppner was discharged, would not by itself allow a reasonable jury to conclude that CMRC had a practice of fabricating complaints against teachers who reported sexual harassment at the time Hoeppner was fired. To defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also Serrano-Perez*, 985 F.2d at 627; *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir.1992). Tardiff's incident is too remote and too isolated to create a triable issue as to the fabrication of the complaints against Hoeppner.

Hoeppner has further failed to provide evidence that administrators would consider any of her other actions while at CMRC as "making waves," such that the administrators would have taken retaliatory action by fabricating complaints and placing Hoeppner on probation. Hoeppner claims that she reported TAs Beetcher and LaBelle for misconduct in July of 1990. Because this occurred after several TAs had already complained about Hoeppner, after CMRC wrote Hoeppner's first performance evaluation which mentioned some of the problems in Hoeppner's classroom, and possibly even after Beetcher and LaBelle first complained about Hoeppner to Campbell, Hoeppner's actions could not have led to CMRC's fabrication of the initial complaints against Hoeppner.

Hoeppner also makes the unsupported assertion that CMRC retaliated against her because of her relationship with Loucks, who was attempting to organize a union at CMRC. Several of Hoeppner's supporting affidavits discuss incidents in which CMRC administrators took actions to discourage unionization or union activities. However, the record contains no evidence that Hoeppner ever took part in union activities and nothing indicates that CMRC thought she was involved with the union efforts. Cohen

did know that Hoeppner had an intimate relationship with Glenn Loucks, but nothing in the record indicates that Cohen or any other CMRC administrator imputed Loucks' union activity to Hoeppner. The record is also devoid of any indication that employees' union activities were occurring before August of 1990, let alone that CMRC knew about any union activities before August of 1990, when Hoeppner was put on probation. There is similarly no evidence that Cohen or anyone else at CMRC knew about the relationship between Loucks and Cohen until the "fall of 1990," well after Hoeppner's probation. Thus, there is insufficient competent evidence to raise a genuine issue as to whether anti-union animus motivated CMRC to fabricate complaints against Hoeppner.

In sum, there is insufficient evidence from which a reasonable jury could find that CMRC had a practice of silencing employees by fabricating false negative evaluations against them, that CMRC had a practice of retaliating against teachers who, like Hoeppner, made reports of TA misconduct and sexual harassment, or that Hoeppner herself engaged in any activities that would cause CMRC to fabricate the complaints against her and her subsequent probation. Thus, two important causal links necessary for her Title VII action are missing from the evidence in the record.

3. Finally, Hoeppner has failed to establish a third crucial link in the causal chain between Hoeppner's report of sexual harassment and her discharge: that CMRC's alleged silencing practice was applied to Hoeppner in this specific case through the fabrication of the complaints against her and through the subsequent discharge of Hoeppner when she continued to make waves by reporting incidents of sexual harassment.

 Hoeppner's evidence on this issue consists primarily of affidavits stating that Hoeppner was a good teacher, that she did not have problems in her classroom supervising, or communicating with, her TAs, and that the TAs themselves were really the troublemakers in Hoeppner's classroom. Hoeppner wants this evidence to show that the complaints against her were not only untruthful and inaccurate but also fabricated.

As we have held on previous occasions, "evidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." *Morgan,* 901 F.2d at 191 (citing *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987)); *see also Ramos,* 936 F.2d at 48. Hoeppner cannot establish that CMRC's reasons for discharging her were merely a pretext for impermissible retaliation "solely by contesting the objective veracity of [the employer's] action." *Morgan,* 901 F.2d at 191. Rather, Hoeppner must provide some additional evidence to indicate that the complaints were purposefully fabricated with the intent of threatening Hoeppner not to make waves. *See St. Mary's Honor Ctr. v. Hicks,* — U.S. —, — – —, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993) (finding that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"; and finding that Title VII does not permit courts "to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable"); *Ramos,* 936 F.2d at 48 (noting that refuting the employer's articulated reasons for taking action against a plaintiff does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent). Thus, given Hoeppner's theory regarding CMRC's motives, Hoeppner's evidence that she was a good teacher and that her TAs were troublemakers does not by itself establish the necessary element of causality between the sexual harassment report and the discharge to support her Title VII action.

Hoeppner presents no other evidence that would provide this missing element. As we already noted, Hoeppner has failed to establish a pattern of fabrication by CMRC that would indicate there was fabrication in this particular case. Hoeppner provides no affidavits from the complaining TAs stating that they did not make the alleged complaints or that they were pressured into lying by CMRC administrators. Instead, Hoeppner

points to the fact that neither Cohen nor Campbell formally observed her classroom to verify the TAs' complaints. This fact may imply something about the accuracy of the complaints against Hoeppner, but it implies nothing about the allegation that CMRC fabricated the complaints. CMRC administrators could fabricate their own observations more easily than the complaints of third parties, who might later recant or deny making the complaints. In fact, their own fabrications would be more reliable as they could not be subsequently contradicted by the source of the complaint.

Hoeppner alleges that TAs Beetcher and LaBelle complained about her classroom supervision in retaliation for her reports of the TAs' own misconduct. If true, this would tend to refute Hoeppner's own claim that CMRC administrators fabricated their negative evaluations. The fact that Beetcher and LaBelle lied to Campbell and Cohen implies that Campbell and Cohen believed Hoeppner had problems managing her classroom or, at least, that Hoeppner's TAs, rather than CMRC itself, were responsible for Hoeppner's allegedly undeserved probation. In any event, several of the other TAs' complaints, as well as Hoeppner's first performance evaluation, preceded Hoeppner's report of Beetcher and LaBelle so CMRC could not have fabricated these complaints against Hoeppner in retaliation for Hoeppner's report of Beetcher and LaBelle.

Hoeppner also attempts to cast doubt on the negative reports of Hoeppner's classroom by Pam Flannery and Pamela Shea that were provided to Cohen after Hoeppner's probationary period had begun. Hoeppner points to an affidavit asserting that CMRC coerced Flannery's signed statement and another affidavit alleging that, contrary to Shea's own affidavit, Shea never spoke with Cohen about Hoeppner's classroom. We do not think these mere allegations are sufficient to invalidate the first-hand statements by Flannery and Shea. Even if they are sufficient, the allegations do not raise a triable issue as to the claim that CMRC fabricated the prior complaints against Hoeppner and Hoeppner's probation.

In sum, even if a factual issue exists as to the validity of the complaints against Hoeppner, summary judgment in favor of CMRC would still be appropriate because Hoeppner has not established that her discharge was causally related to the protected activity of reporting sexual harassment.

The district court's judgment is therefore *affirmed.*