**Barbara WEEKS, Plaintiff,**

v.

**STATE OF MAINE et al., Defendants.**

**Civ. No. 94–0046–B.**

United States District Court,
D. Maine.

Oct. 12, 1994.

Joyce A. Oreskovich, Sharon & Oreskovich, Portland, ME, for plaintiff.

Charles A. Harvey Jr., Verrill & Dana, Portland, ME, for defendants.

### ORDER AND MEMORANDUM
### OF DECISION

BRODY, District Judge.

Plaintiff Barbara Weeks was a Tax Examiner in the Enforcement Office at the State of Maine's Bureau of Taxation ("Bureau"). In 1992, she filed two sex discrimination complaints and one age discrimination complaint with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. Plaintiff alleges that her employer illegally retaliated against her in response to her filing the sex and age discrimination complaints. Her cause of action arises under the following statutes: 42 U.S.C. §§ 2000e to 2000e–17; 29 U.S.C. §§ 621 to 634; and 5 M.R.S.A. §§ 4551 to 4572.

Plaintiff names the State of Maine and two of her superiors as Defendants. The individually named defendants are Stephen Murray, Director of the Bureau's Enforcement Division; and Elizabeth Dodge, Acting Director of the Enforcement Division. Defendants argue that they are entitled to summary judgment as a matter of law because there

are no genuine issues as to any material facts.[1]

## I. Discussion

Plaintiff's Amended Complaint basically alleges three retaliatory actions. First, Plaintiff claims that she was reassigned, at first partially and then permanently, to a less prestigious job in which she had no prior experience. Second, Plaintiff charges that she was denied a job promotion which was awarded to a less qualified candidate. Finally, Plaintiff claims that her employer relocated a Senior Tax Examiner position from her division to prevent her from obtaining the position.

Summary judgment in all cases is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "'The moving party is entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e). Instead, the nonmoving party, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.*

■ To avoid summary judgment in a retaliatory discharge case under Title VII,[2] a plaintiff must show "that: (1) she engaged in a protected activity as an employee, (2) she

was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the discharge." *Hoeppner v. Crotched Mountain Rehabilitation Ctr., Inc.,* 31 F.3d 9, 14 (1st Cir.1994) (citations omitted). While *Hoeppner* involved retaliatory discharge, the Court's analysis is equally applicable to the alleged adverse employment retaliation here.

As to each of Plaintiff's alleged claims, she has established that she engaged in a protected activity when she filed her sex and age discrimination complaints. She has also shown that the adverse actions complained of occurred after she filed the complaints. The issue before the Court therefore, "is whether ... [Plaintiff] failed to present sufficient evidence of a causal link" between her discrimination complaints and the allegedly retaliatory actions. *See id.* at 14. In answering that question, the Court will address each of the counts in turn.

### A. Counts I through IV

■ The first four counts of Plaintiff's Amended Complaint revolve around the same issue—whether her temporary, and subsequently permanent, reassignment constituted illegal retaliation. On January 9, 1992, Plaintiff filed her first sex discrimination complaint. (Am.Compl. ¶ 8.) On February 26, 1992, the Maine Human Rights Commission sent notice of Plaintiff's allegation to her employer. (Weeks Aff. ¶ 3). On February 28, Plaintiff's job duties were altered. She was assigned to "an entry level tax examiner position" in the "withholding unit." (Am.Compl. ¶ 9.)

1. Although Plaintiff's factual allegations vary somewhat with respect to the individual Defendants, the two individuals implicated by Plaintiff's charges have asserted their defense together. Accordingly, this decision does not "distinguish [between] the individual defendants in order to determine to what extent each may or may not have contributed to the alleged harm." *Cotnoir v. University of Maine Systems,* 35 F.3d 6, 10 n. 1 (1st Cir.1994) (citing *Domegan v. Fair,* 859 F.2d 1059, 1065 (1st Cir.1988)).

2. While Plaintiff's claims arise under Title VII, the Age Discrimination in Employment Act, and the Maine Human Rights Statute, the Court's analysis is the same for each. First, the test

under Title VII is virtually identical to that utilized in federal cases interpreting retaliatory claims under 29 U.S.C. § 623(d) of the Age Discrimination in Employment Act. *See e.g., Zebedeo v. Martin E. Segal Co., Inc.,* 582 F.Supp. 1394, 1418 (D.Conn.1984) Second, in applying federal case law to cases arising under the Maine Act, the Maine Supreme Court has followed the rubric developed in Title VII cases. *See e.g., Bowen v. Department of Human Services,* 606 A.2d 1051 (Me.1992). Therefore, while Plaintiff's claims arise under each statute, the Court will analyze those claims only under the Title VII framework. For a more detailed analysis of this issue, *see Singer v. State of Maine,* 865 F.Supp. 19 (D.Me.1994).

Similarly, on March 26, 1992, Plaintiff filed a second sex discrimination complaint against Defendants. (Am.Compl. ¶ 16.) Between April 6 and April 14, David Campbell, a supervisor in the Bureau's Personnel Department, received word from the Maine Human Rights Commission that Plaintiff had filed a complaint. (Weeks Aff. ¶ 5; Ex. 4.) On April 7, 1992, Defendant Stephen Murray assigned Plaintiff permanently to the Levy Unit and ordered that her desk and belongings be moved there. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 6.) ("Defs.' Mem.").

Plaintiff argues, based on this chain of events in 1992, that Defendants retaliated against her when they altered her job duties in February, and moved her desk and permanently reassigned her in April. Defendants respond that, "[t]here is no proof on this record that the February and April reassignments were in any way retaliatory." (Defs.' Mem. at 6.) Defendants argue specifically that, because Plaintiff admits "that she has no personal knowledge that any supervisor ... knew of the filing of these complaints," she has failed to prove the required causal link between those complaints and Defendants' actions. (Defs.' Mem. at 5.) To suggest that this chain of circumstances was merely coincidental stretches the bounds of credulity.

Plaintiff offers ample evidence to support the inference that her employer knew of her complaints and that each of the employment actions complained of were driven by a retaliatory motive. Plaintiff alleges that a Personnel Officer labelled her a "troublemaker." (M. Webster Aff. ¶ 3; R. Webster Aff. ¶ 8.) Defendants argue that "there is no evidence" that referring to Plaintiff as a troublemaker "was in relation to anything approaching actionable retaliation." (Defs.' Mem. at 7.)

The Court disagrees with Defendants' characterization of this incident. First, the Personnel supervisor who called Plaintiff a "troublemaker" is the individual who received the notice from the Maine Human Rights Commission that Plaintiff had filed discrimination complaints. (Weeks Aff. ¶ 5.) Second, another woman who filed discrimination complaints was also called a "trouble-maker" by this same supervisor. (M. Webster Aff. ¶ 3; *See* R. Webster Aff. ¶¶ 2, 8.)

In addition, Plaintiff also introduces evidence that Defendants Dodge and Murray were "out to get" Plaintiff and the other women who filed discrimination complaints in 1992. (O'Neal Aff. ¶ 7.) Defendant Murray was the individual responsible for Plaintiff's reassignments. (Pl.'s Mem. at 6, 8.) Moreover, at least one supervisor's opinion of Plaintiff may have changed after she filed her discrimination complaints. Specifically, in September of 1991, a fellow employee, Susan O'Neal, was told by her supervisor to approach Plaintiff with any questions because she "was the most knowledgeable person" in the office. (O'Neal Aff. ¶ 2.) In March, 1992, however, the same supervisor told Ms. O'Neal to "stay away from Barbara Weeks for [O'Neal's] own good [because] ... Weeks was 'trouble' and [she] should not be seen with Ms. Weeks either inside or outside the office." (*Id.* ¶ 3.) This evidence suggests that at least one supervisor at the Bureau changed her opinion of Plaintiff after she filed her discrimination complaints.

The foregoing analysis notwithstanding, Defendants argue that they had a legitimate business reason for Plaintiff's transfers. (*See* Murray Aff. ¶¶ 4, 6). Specifically, Defendant Murray states that Plaintiff "was selected and reassigned ... because she had many years of collection experience, was one of the more accomplished tax examiners in the Enforcement Division, and had displayed the ability to audit files accurately and quickly...." (Murray Aff. ¶ 6.) Plaintiff responds that she was assigned to a less prestigious job, one in which she had no prior experience, and in which another, less senior, employee would have been better suited. (Weeks Dep. at 130–32.) Her immediate supervisor agreed that a lower-level employee should be assigned to the Levy Unit. (*Id.* at 130.) When her supervisor communicated these concerns to Defendant Murray, he disagreed and directed that Plaintiff be placed in the Levy Unit. (*Id.* at 130–31.)

The Court is satisfied that Plaintiff has done more than simply "refut[e] the employer's articulated reasons." *Hoeppner,* 31 F.3d at 17 (citing *Ramos v. Roche Products,* 936

F.2d 43, 48 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991)). Her affidavits[3] plainly suggest that "discrimination was the real reason." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, —— ——, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993)).

As *Hoeppner* points out, " 'there must be evidence on which the jury could reasonably find for the plaintiff.' " *Id.* at 16 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). While Defendants may argue that Plaintiff has only introduced " 'a scintilla of evidence in support of [her] position,' " *Id.* (citation omitted), the Court is satisfied that a reasonable jury could conclude that a "discriminatory animus" motivated Defendants' actions. *Id.* at 14 (citing *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988)).

Defendants' Motion for Summary Judgment is accordingly denied with respect to Counts I through IV.

### B. Counts V through VII

■ In June 1992, Plaintiff amended her second sex discrimination complaint to include age as a basis for the charge. (Am. Compl. ¶ 25.) Subsequent to her filing the amended complaint, she alleges that Defendants retaliated against her when they failed to promote her to the position of Senior Tax Examiner, and instead chose "a less qualified candidate." (Am.Compl. ¶ 26.) Plaintiff asserts that Defendant Dodge, in overseeing the filling of the position in question, conducted an overexpansive search which minimized "plaintiff's chances of selection for the job." (Am.Compl. ¶ 27.) Moreover, Plaintiff charges Defendants Dodge and Murray with deliberately establishing unnecessary requirements for the job which Plaintiff could not meet. These assorted actions combined, Plaintiff asserts, to violate her rights under Title VII, the Age Discrimination in Employment Act, and the Maine Human Rights Act.

Defendants admit that they knew of Plaintiff's complaints by the time her alleged cause of action arose. (Defs.' Mem. at 7.) They simply assert that "plaintiff has no proof other than conjecture and anecdote" that her failure to receive the promotion was retaliatory. (Defs.' Mem. at 9.) However, the evidence introduced as to Counts I through IV with respect to Defendants' "discriminatory animus" is equally persuasive with regards to Counts V through VII. The "anecdotes" recited in the affidavits submitted by Plaintiff, are precisely the sort of evidence contemplated by the Acts to be relied upon, if persuasive, in discrimination cases. Moreover, these affidavits go beyond "conjecture;" they actually link the individual Defendants with a malicious retaliatory motive. Little could be more persuasive, if true, than the allegation that Defendants Dodge and Murray were "out to get" Plaintiff. Furthermore, the comment that Plaintiff was a "troublemaker," the warning to "not be seen with Ms. Weeks either inside or outside the office," and the statement that her transfer constituted "disciplinary action," all indicate that retaliation may have provided the motive behind each of Defendants' challenged actions. Accordingly, Plaintiff has introduced sufficient evidence to support a finding that "discrimination was the real reason" behind Defendants' actions. *Hoeppner,* 31 F.3d at 17 (citation omitted).

■ Plaintiff argues in her Amended Complaint that Campbell's denigrating description of her as a "troublemaker," was "[i]n and of itself ... actionable retaliation." (Pl.'s Mem. of Law in Supp. of Objection to Defs.' Mot. for Summ. J. at 11.) ("Pl.'s Mem.") The Court disagrees. While the comment, if proven at trial, may indeed serve "as direct evidence of Defendants' mindset," (*id.*), it, by itself, does not rise to the "constant rudeness" required to show retaliatory conduct. *See Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994). Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's claim that

---

**3.** Defendants moved to strike four of Plaintiff's affidavits on the grounds that Plaintiff should have identified the affiants during discovery as required under the rules. The Court has denied Defendants' Motion and therefore considers the affidavits for the purposes of resolving this Summary Judgment Motion. The Court has allowed Defendants, however, to conduct additional discovery as to these new affiants, which may have an impact on the outcome at trial.

being called a "troublemaker" is actionable retaliation. Of course, Plaintiff may still introduce evidence as to this negative reference in trying to prove her other allegations at trial.

In addition to advancing sufficient evidence of Defendants' discriminatory bent, Plaintiff also suggests that Defendants' proffered "reason was false." *Hoeppner*, 31 F.3d at 17 (citation omitted). For example, Defendant Dodge claims that Plaintiff was not eligible for the promotion to Senior Tax Examiner because the Human Resources Department had not placed Plaintiff's name on the "certification issued to fill the position." (Dodge Aff. ¶ 3.) Plaintiff counters that "as of June 19, 1992" she was on the certification list but was removed due to Dodge's altering the qualifications required for the job promotion in question. (*See* Weeks Aff. ¶ 8; Pl.'s Mem. at 12.)

Dodge claims that the qualifications were altered because the position of Senior Tax Examiner "required *special* qualifications" because the job was a *"unique* position," one which was *"different* from the other senior tax examiner positions in the division." (Dodge Aff. ¶ 4 (emphasis added).) As a result of these stringent requirements, according to Dodge, Plaintiff was ineligible for the job. Dodge suggests that the person most qualified for the job would need significant experience managing, handling, maintaining, and disposing of seized property— experience that Plaintiff did not have. (*Id.*) However, the person who left the job to create the opening stated that the job does not require such experience. (Weeks Aff. ¶ 9.) For example, he had only been a Revenue Agent for two months, and previously worked as General Manager at Tune 'N Lube, before occupying the position of Senior Tax Examiner. (*Id.*)

The applicant finally chosen was described by Dodge as "the best candidate for the job." (Dodge Aff. ¶ 6.) But, as Plaintiff points out, "[t]he successful candidate ... asked me to

train other Tax Examiners ... about various aspects of the job, came to me with questions herself, and was assigned certain tasks I had actually performed in the Levy Unit after I was transferred there." (Weeks Aff. ¶ 10.) Given the record before the Court, Plaintiff has raised a genuine issue of material fact as to whether Defendants' failure to promote her was illegal retaliation.

For the reasons advanced in this portion of the opinion, Defendants' Motion for Summary Judgment is granted in part and denied in part with respect to Counts V through VII.

## C. Counts VIII through X

■ Finally, Plaintiff claims that Defendants deliberately left vacant and eventually relocated a Senior Tax Examiner position from the Enforcement Division to the Sales Tax Division so as to keep her from competing for the job.[4] Defendants offer the following facts which remain uncontroverted by Plaintiff: The Bureau created a vacant, Senior Tax Examiner position in Plaintiff's division. (LeFaver Aff. ¶ 3.) Soon after it was vacant, however, re-organizations in the Sales Tax Division of the Bureau required an infusion of more supervisory staff to that Division. (LeFaver Aff. ¶ 3.) The Bureau, therefore, decided to reassign the Senior Tax Examiner position desired by Plaintiff to the Sales Tax Division. (*Id.*) The individual responsible for this decision was John LeFaver, the State Tax Assessor. (*Id.* ¶ 4.) Defendants Dodge and Murray played no part in the decision. (*Id.*)

While it is true that Defendants failed to fill, and then relocated, the position after Plaintiff's discrimination complaints were filed, her claim here is less compelling than her other allegations. First, Plaintiff simply has not shown any evidence of discrimination on the part of John LeFaver, the individual responsible for the job relocation. Second, Plaintiff does not refute those plausible business reasons articulated by Mr. LeFaver.

---

4. Plaintiff's Amended Complaint alleges that the failure to fill the vacant position and the removal of the position from the Enforcement Unit constituted illegal retaliation. (Am.Compl. ¶ 36.) In a later memorandum submitted to the Court, Plaintiff argues that "the crux" of her claim "is

that Defendants preferred to leave this supervisory position vacant rather than promote her. The eventual decision ... to reallocate the position to the Sales Tax Division is beside the point." (Pl.'s Mem. at 13.)

Accordingly, with respect to Counts VIII through X, Plaintiff fails to show a "causal connection." *Hoeppner,* 31 F.3d at 14. For these reasons, Defendants' Motion for Summary Judgment is *Granted* with respect to Counts VIII through X.

## II. Conclusion

The Court grants in part and denies in part Defendants' Motion for Summary Judgment. As to Counts VIII, IX, and X, Defendants' Motion for Summary Judgment is *GRANTED.* As to Counts I through IV, Defendants' Motion for Summary Judgment is *DENIED.* And as to Counts V through VII, Defendants' Motion for Summary Judgment is *GRANTED* with respect to Plaintiff's claim that she was called a "troublemaker," and is otherwise *DENIED.*

*SO ORDERED.*