McKeown v. Dartmouth Bookstore          CV-96-221-SD 06/30/97 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


<u>Judith S. McKeown</u>

    v.                                    Civil No. 96-221-SD

<u>Dartmouth Bookstore, Inc.</u>


## **O R D E R**

In this employment discrimination action, a former employee of the Dartmouth Bookstore, Inc., in Hanover, New Hampshire, claims that she was harassed on the basis of her gender and age, and ultimately fired, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, <u>et seq.</u>, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, <u>et seq.</u> (ADEA).

Presently before the court is defendant's motion for summary judgment, to which plaintiff objects.

### <u>Background</u>

Plaintiff Judith S. McKeown began working at the Dartmouth Bookstore in September 1988.  At some point in 1992 she changed

positions within the bookstore to buyer of adult trade books and audiotapes, a nonsupervisory position. See Deposition of Judith S. McKeown at 25.

In early 1994 McKeown and some of her co-workers began to discuss what they believed was inappropriate attire on the part of some of their co-workers. Id. at 62-63. These individuals were particularly concerned with the skimpy clothing worn by a woman who worked in the business office. Id. at 63-64. After several people approached the assistant manager, he appointed a "dress code committee" to come up with general clothing guide-lines. McKeown was appointed to sit on the committee.

Following McKeown's appointment to the dress code committee, Paul Messer, the shipping room manager, repeatedly made comments to her such as "are we all supposed to look like McKeown now[?]" Id. at 69. He also repeatedly made statements such as "watch out, here comes the old broad." Id. at 70. When McKeown com-plained to him about his comments, he refused to speak to her at all. Id. at 70. Instead, from May of 1994 until May of 1995, he would say to others "here comes Mother McKeown" or "here comes

2

Old Mother McKeown" whenever she entered the room in which he worked.  <u>Id.</u> at 71.

Sometime in February 1995, McKeown complained about Messer's conduct to the manager of the bookstore, who responded simply that "boys will be boys."  <u>Id.</u> At 48.  In March plaintiff met with the assistant manager in order to complain about the conduct  of those in the shipping department.  The assistant manager simply replied that it was not his job and asked her, "can't you take it?"  McKeown Deposition at 87-88.

Soon after, on March 20, 1995, the bookstore sent McKeown a letter about an incident that had occurred in January.  The letter stated that McKeown was present when one of her co-workers tore down one of Messer's "girlie" posters and pasted up portions of a company newsletter about courtesy around Messer's work area. The letter recognized that McKeown had not performed the conduct, but reprimanded her for being present during, and for encour-aging, the conduct.  As the letter asked for her signature, McKeown signed it, but she put in writing that she denied encouraging the conduct.

On May 19, 1995, the bookstore terminated McKeown.  Plaintiff filed a charge of discrimination with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission on November 9, 1995.  After receiving a notice of her right to sue on March 18, 1996, McKeown filed the instant complaint on April 22, 1996.

Discussion

## 1. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; <u>Lehman v. Prudential Ins. Co. of Am.</u>, 74 F.3d 323, 327 (1st Cir. 1996).  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

4

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255. Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st

5

Cir. 1990) (citations omitted).

## 2. Hostile Environment Sexual and Age Harassment

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  And sexual harassment constitutes unlawful discrimination under Title VII. Meritor Savings Bank, F.S.B. v. Vinton, 477 U.S. 57, 66 (1986).

Workplace sexual harassment may take either of two forms. "Quid pro quo harassment" consists of promises of favorable treatment or threats of unfavorable treatment calculated to coerce an employee into submitting to unwelcome sexual advances. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996). "Hostile environment harassment" consists of "offensive gender-based conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive' and is

6

subjectively perceived by the victim to be abusive." <u>Id.</u>
(quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21
(1993)).  The instant case is a "hostile environment harassment"
case.

The determination of whether a plaintiff has established a
hostile or abusive workplace environment requires the court to
consider all of the circumstances, but particularly those con-
cerning (1) the frequency of the discriminatory conduct; (2) its
severity; (3) whether it is physically threatening or humiliating
rather than a mere offensive utterance; and (4) whether it
unreasonably interferes with an employee's work performance.
<u>Brown v. Hot, Sexy & Safer Productions, Inc.</u>, 68 F.3d 525, 540
(1st Cir. 1995), <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 1044
(1996) (citing <u>Harris</u>, <u>supra</u>, 510 U.S. at 23).[1]  As previously
indicated, the relevant factors must be viewed both subjectively
and objectively.  <u>Id.</u>

Plaintiff's theory of harassment is that Messer's remarks,

_____

[1]Although <u>Brown</u> was a Title IX case, it made use of the
quoted elements which were taken from Title VII cases.

7

such as his habit of calling her "Old Mother McKeown" when she visited the shipping area, combined with other aspects of her employment, made up a hostile working environment. Sexual harassment, however, must be viewed in conjunction with all of the circumstances. Here, all sides agree that a primary motivation behind Messer's comments was McKeown's earlier activism in the area of instituting an employee dress code. In addition, the bulk of Messer's offensive behavior appears to have involved his refusal to speak to McKeown, a form of behavior perhaps juvenile or unprofessional, but which does not rise to the level of sexual harassment.

In an attempt to provide reinforcement for her sexual harassment claim, plaintiff relies on other aspects of her employment such as being "subjected to" employees who wore sexually provocative clothing, including outfits "as short as most person's underwear" and very tight tops over a "big chest." See Plaintiff's Memorandum at 12. However, the court is unwilling to accept that a female employee's unilateral decision to wear tight or provocative clothing could be construed as

creating or contributing to an "objectively hostile or abusive work environment."

Finally, plaintiff asserts that she was repeatedly and continuously subjected to "girlie posters" and sexually provocative T-shirts worn by co-workers. As plaintiff notes in her memorandum of law, there are times when offensive posters, and perhaps even T-shirts, can support a sexual harassment claim premised on a hostile environment theory. However, having reviewed plaintiff's evidence, the court finds that even the most proper of sensibilities would not have cause to find the subject posters and T-shirts created a hostile or abusive enironment.

Accordingly, the defendant's motion for summary judgment is granted as to plaintiff's sexual harassment claim (Count I) and her age harassment claim (Count III).

## 2. The Retaliation Claim

Defendant next seeks summary judgment on plaintiff's retaliation claim. Where, as here, plaintiff has no direct evidence of her employer's retaliatory motivation, she may make

use of the familiar burden-shifting framework that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996). Under this scheme, plaintiff can make out a prima facie case of retaliation by proving that: (1) she engaged in conduct protected by Title VII; (2) she suffered an adverse employment action; and (3) the adverse action causally related to her conduct. See id.; Hoeppner v. Crotched Mountain Rehabilitation Ctr., 31 F.3d 9, 14 (1st Cir. 1994).

Following plaintiff's prima facie showing, the burden shifts to defendant to "articulate a legitimate, nonretaliatory reason for its employment decision." Fennell, supra, 83 F.3d at 535. The burden of production[2] then returns to plaintiff, who must show both that the defendant's reason is a pretext and that defendant possessed retaliatory animus. Id. Finally, it should be noted that

> [o]n summary judgment, the need to order the
> presentation of proof is largely obviated, and a

---

[2]Unlike the burden of production, the burden of persuasion remains at all times with plaintiff.

10

> court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.

Id.

The court's decision to enter summary judgment on plaintiff's sexual harassment claim does not necessarily void her retaliation claim. To make a prima facie showing of retaliation, plaintiff need not prove that the conduct complained of amounted to a Title VII violation. "It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred [and] that [s]he acted on it . . . ." Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). The court finds that plaintiff's repeated complaints to management about Messer's conduct were motivated by a reasonable, good-faith belief that a violation of Title VII had occurred.

Defendant provides a legitimate nondiscriminatory reason for plaintiff's lay-off: In May of 1995 economic realities made it necessary for it to discharge the most junior person in the trade book department--the plaintiff.

11

Plaintiff relies on several pieces of evidence to cast doubt on defendant's proffered explanation for its decision and to support that its true motivation was retaliatory animus. First, she notices the closeness in time between her protected conduct (complaining of sex and age discrimination) and the decision to terminate her. See id. Also significant is the suspicious timing of the written reprimand she received in March for "the January incident" involving the ripping-up of posters. The reprimand followed suspiciously soon after she made a complaint about harassment but, curiously, long after the January incident had been investigated. This and other evidence persuade the court that defendant's motion for summary judgment on plaintiff's retaliation claims must be denied.

12

<u>Conclusion</u>

Defendant's motion is granted as to Counts I (Sexual Harassment/Title VII) and III (Age Harassment/ADEA), and is otherwise denied.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

June 30, 1997

cc:   All Counsel

13