Drew v. First Sav. of NH                CV-95-495-SD.P   04/02/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Eunice Drew;
Joan Wentworth


    v.                                          Civil No. 95-495-SD


First Savings of New Hampshire;
Stephanie Kruy


O R D E R


Plaintiffs object to a Report and Recommendation (R & R) of the magistrate judge.  The court has conducted the requisite de novo review of the R & R.  28 U.S.C. § 636(b)(1)(C); Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 49-50 (1st Cir. 1995).


1.  Background[1]

Plaintiffs Eunice Drew and Joan Wentworth are former

---

[1]As the R & R at issue concerned a motion to dismiss filed by defendant First Savings of New Hampshire (Bank), the alleged facts herein, taken from plaintiffs' complaint, are considered as true, indulging every inference helpful to plaintiffs' cause. Garita Hotel, Ltd. v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992).

employees of defendant Bank.  Seeking relief under federal and state law, they claim money damages for perceived sexual harassment against them by defendant Stephanie Kruy, a supervisory employee of Bank.[2]

Drew was employed by Bank as a servicing clerk, receptionist, and switchboard operator in the period between October 1991 and January 20, 1995.  Wentworth's employment as a receptionist and customer service representative commenced in June 1986 and terminated on February 24, 1995.  Each of the plaintiffs was employed in Bank's main office located in Exeter, New Hampshire.

In early January 1995 defendant Kruy transferred from Bank's Stratham office to become branch manager of Bank's main office. Within a short time of her arrival, Kruy instituted a policy she had employed in Stratham since 1993 that required female employees of the Bank to hug her when receiving their paychecks. Plaintiffs had previously heard of this practice, considered it to be repugnant, and believed that Kruy was a lesbian.[3]

---

[2]The federal law claims directed against Bank are grounded on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Kruy is charged with the tort of battery under state law.

[3]Kruy has apparently denied under oath that she is a lesbian, but, for purposes of resolution of the issue now before

2

The first payday after Kruy commenced her employment at Bank's main office fell on January 5, 1995. On that date, Kruy exclaimed, "I look forward to Thursdays because I get to hug everyone before I give them their paychecks." Kruy then hugged Bank's female employees, including Drew, and gave each of them, in addition to the paycheck, a bagful of chocolate hearts and a note signed, "Love, Steph." Drew described the January 5 embrace as a "full frontal hug."

As Wentworth was out sick from work on January 5, she expected Bank to follow its former practice of mailing her paycheck. However, when she returned to work on January 9, she also received the "full frontal hug," together with the bag of candy and note.

On that day, January 9, Wentworth complained of this hugging policy to Carol Cross of Bank's Human Resources Department. Wentworth also inquired of Cross whether there had been other such complaints. Cross, who had been receiving complaints of Kruy's hugging policy, falsely answered this inquiry in the negative. Wentworth did not therefore press the matter, and Cross did not further investigate or take further action.

Kruy repeated the hugging practice on the next payday,

the court, the court assumes plaintiffs' allegations to be true.

3

January 12, 1995.  Neither the complaint nor plaintiffs' legal memo claims that plaintiffs were recipients of hugs, but the complaint does allege that plaintiffs felt "humiliated, degraded, and helpless because it was obvious that [Bank] was going to allow Stephanie Kruy to continue" such conduct.  Plaintiffs further allege that the close friendship between Kruy and Brenda Dolan, Senior Vice President of Bank, made them afraid to further press the matter.

Kruy was absent from the Bank on January 19, and paychecks were distributed without hugs by a representative of the Human Resources Department.  Drew observed that other female employees were relieved that they were not subjected to the hugging practice, and she expressed her own relief to the Human Resources representative.

On January 20, 1995, Kruy approached Drew with complaints about her performance as a switchboard operator.  Drew's response was to tell Kruy she could not continue working for someone who required hugs from her female subordinates as a condition of receipt of paychecks.  Drew then tendered her resignation on the ground that she had been under continued sexual harassment, which was causing her stress, and that the Human Resources Department had failed to put an end to this harassment.

4

Cross distributed the paychecks on January 26, 1995. When she gave Wentworth her paycheck, she advised Wentworth that their prior conversation of January 9 "had never taken place as it could mean my job." Distressed by this conversation, which Wentworth interpreted to mean that improper pressure was being put on Cross by Kruy and Dolan, Wentworth was stricken with an unspecified illness, and her doctor put her on sick leave as of February 13, 1995. On February 24, 1995, Wentworth tendered her resignation because "she was physically and emotionally unable to return to [Bank] to work in an environment that condoned and fostered degradation and humiliation of its female employees."

Kruy was never disciplined by Bank for her hugging practice, and in fact she was named employee of the month in March 1995.

Defendant Bank moved to dismiss plaintiffs' Title VII claim (document 11), and plaintiffs objected (document 12). The motion was referred to the magistrate judge, who filed his R & R, which recommended that the motion to dismiss be granted as to plaintiffs' Title VII claims and that the exercise of supplemental jurisdiction over the remaining claims be denied. Document 21, at 16, 17.[4] Plaintiffs filed a timely objection to the

[4]Initially, the magistrate judge considered and correctly rejected Bank's claim that "same sex" sexual harassment was not actionable under Title VII. Document 21, at 7 (citing King v.

R & R.  Document 22.


2.  Discussion

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  And sexual harassment constitutes unlawful discrimination under Title VII. Meritor Savings Bank, F.S.B. v. Vinton, 477 U.S. 57, 66 (1986).

Workplace sexual harassment may take either of two forms. "Quid pro quo harassment" consists of promises of favorable treatment or threats of unfavorable treatment calculated to coerce an employee into submitting to unwelcome sexual advances. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996). "Hostile environment harassment" consists of "offensive gender-based conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive' and is subjectively perceived by the victim to be abusive."  Id.

_____

Town of Hanover, No. 94-274-JD (D.N.H. May 17, 1996)).
     The magistrate judge also recommended the mooting of plaintiffs' motion to strike defendants' reply brief.

6

(quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)). The instant case is a "hostile environment harassment" case.

The determination of whether a plaintiff has established a hostile or abusive workplace environment requires the court to consider all of the circumstances, but particularly those concerning (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating rather than a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. <u>Brown v. Hot, Sexy & Safer Productions, Inc.</u>, 68 F.3d 525, 540 (1st Cir. 1995), <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 1044 (1996) (citing <u>Harris</u>, <u>supra</u>, 510 U.S. at 23).[5] As previously indicated, the relevant factors must be viewed both subjectively and objectively. <u>Id.</u>

Viewed through such legal lens, the circumstances of which plaintiffs here complain do not serve to bring their claims within the purview of Title VII. The gist of the complaint concerns two uninvited hugs over a three-week period, accompanied by candy and "Love, Steph" notes, and the falsehood told Went-

---

[5]Although <u>Brown</u> was a Title IX case, it made use of the quoted elements which were taken from Title VII cases.

7

worth, followed by a request for protective silence from a supervisory employee. Moreover, it appears that the first time plaintiffs directly complained to Kruy that they found her hugging practice offensive was on the occasion of Drew's resignation, which occurred on January 20, 1995. Thereafter, the hugs did not continue.

This is not the type of case which this Circuit,[6] applying the Harris factors, would find "sufficiently severe or pervasive to . . . create an abusive working environment." Morrison v. Carleton Woolen Mills, Inc., No. 96-1224, slip op. at 18 (1st Cir. Mar. 19, 1997) (citing and quoting Lipsett v. University of Puerto Rico, 864 F.2d, 881, 897-98 (1st Cir. 1988)). See also Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 782-83 (1st Cir. 1990).

It follows that the magistrate judge correctly recommended that the Title VII claims of the plaintiffs be dismissed. The R & R is, accordingly, accepted without modification.

---

[6]In the R & R, the magistrate judge cited as comparative examples certain Seventh Circuit cases, and plaintiffs attack on the unsupported ground that these decisions demonstrate hostility to and a desire of that Circuit to clear its docket of unwanted sexual harassment cases. The court finds it unnecessary to enter this dispute, as the law of the First Circuit is sufficiently clear to permit it to resolve the issues currently before it.

8

## 3. Conclusion

The Report and Recommendation of the magistrate judge (document 21) is accepted without modification.

It is accordingly herewith ordered that the defendants' motion to dismiss (document 11) be granted insofar as it seeks dismissal of plaintiffs' Title VII claims. As those claims form the sole basis for federal jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). The plaintiffs' motion to strike (document 15) is mooted by these orders.

The clerk is directed to close this case.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 2, 1997

cc:   Charles G. Douglas III, Esq.
      Mark T. Broth, Esq.
      Martha V. Gordon, Esq.