King v. Hanover                          CV-94-274-JD  05/17/96 P
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Bruce King

        v.                              Civil No. 94-274-JD

Town of Hanover, et al.


                          O R D E R


     The plaintiff, Bruce King, brought this action seeking

damages related to his employment with the Hanover Department of

Public Works and asserting a variety of state and federal claims.

Before the court is the defendants' motion or summary judgment on

the plaintiff's federal claims (document no. 24).


                          Background[1]

     In 1981, the plaintiff began work at the Hanover Department

of Public Works ("DPW") as a heavy equipment operator and truck

driver.  In 1987 or 1988, defendant Leo Hamill became the

plaintiff's supervisor.  In July 1991, Hamill completed an

evaluation of the plaintiff's work, rating the plaintiff's

performance "above average."   Hamill's June 1992 evaluation

indicated that the plaintiff was "performing acceptably."

_____

     [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

According to the plaintiff, Hamill "consistently created a hostile and offensive sexual atmosphere in the workplace" by "repeatedly ma[king] sexually suggestive, socially inappropriate and offensive comments in an effort to engage Plaintiff in conversations and interactions of an inappropriate and sexual manner." Complaint ¶¶ 17-18. The plaintiff alleges that Hamill's obscene comments and gestures "suggested that [Hamill] thought Plaintiff was homosexual or interested in engaging in homosexual activity with [Hamill]" and caused the plaintiff "severe embarrassment, a high level of stress, and personal sense of humiliation." Complaint ¶¶ 23-24.

In October 1992, the plaintiff complained to defendant Richard Hauger, Hamill's immediate supervisor and the director of the DPW, about Hamill's behavior, and requested reassignment from his position. No remedial action was taken.

In March 1993, Hauger informed the plaintiff that he had decided to take disciplinary action against the plaintiff for destroying town property on three occasions in December 1992, February 1993, and March 1993, and failing to file incident reports for two of these incidents. Hauger suspended the plaintiff for one week without pay and placed him on ninety days' probation. The plainitff experienced depression following the

disciplinary action and apparently did not return to work after receiving notice of his suspension and probation.

The DPW's personnel policy manual provides that an employee shall not be disciplined without good cause, and permits employees to appeal disciplinary actions to the town manager.[2] The plaintiff exercised his right and a hearing was scheduled for May 26, 1993. The plaintiff requested that the hearing be open to the public; that the town of Hanover produce certain witnesses to testify; that the town record the hearing or, in the alternative, permit the plaintiff to employ the services of a court reporter to transcribe the proceedings; and that the town

_____

[2]The DPW's personnel policy manual provides that an employee shall not be disciplined without good cause, and permits employees to appeal disciplinary actions to the town manager. Section 13-6 of the policy manual provides that

[a]n employee shall have the right to appeal any disciplinary action taken against him or her, and shall be so advised at the time the employee is informed of the proposed disciplinary action. (See also Grievance Procedures, Chapter 14).

Section 14-5 of the manual outlines grievance procedures, and requires employees to bring their complaints first to their immediate supervisor and then to their department head, who is required to "provide the employee with a written decision on the matter within ten days of receipt of the written grievance." An employee may appeal the department head's decision to the Town manager, and must "state whether a hearing or a review of the facts of the case is requested." The manual provides that employees appealing a dismissal action may request a public hearing, but makes no corresponding provision for employees who appeal other forms of discipline.

3

manager, defendant Clifford Vermilya, excuse himself from the proceedings because of bias.  After all of these requests were denied, the plaintiff chose not to participate further and Vermilya deemed the request withdrawn.

On July 21, 1993, the plaintiff filed a bill of equity in the Grafton County Superior Court, seeking reinstatement to his position, back pay, and damages.  Adopting the statute of limitations for administrative appeals, the state court ruled that the plaintiff's petition was untimely and dismissed the case.  The instant lawsuit followed.[3]

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st

---

[3]Before filing his complaint in this lawsuit, the plaintiff appealed the superior court's decision to the New Hampshire Supreme Court.  The Supreme Court affirmed the dismissal of the plaintiff's petition to the extent it constituted an administrative appeal of the town manager's decision.  However, the court also read the plaintiff's petition to assert constitutional and contractual claims that had not been untimely filed.  Accordingly, the court reversed the superior court's dismissal of these claims and remanded the case to the superior court for further consideration.  King v. Town of Hanover, 139 N.H. 752, 754, 661 A.2d 228, 230  (1995).

4

Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.  Sexual Harassment

The defendants argue that summary judgment is warranted on count one of the plaintiff's complaint because same-sex sexual harassment is not actionable under Title VII, the conduct at issue was not unwelcome to the plaintiff, and the conduct at issue was not sufficiently severe or pervasive to constitute a hostile work environment.  The plaintiff disputes these assertions.

Title VII of the Civil Rights Act of 1964 provides:

It shall be an unlawful employment practice for an employer--

(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2(a) (West 1994).  The Supreme Court has recognized that, as applied to discrimination on the basis of gender, "the phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 64 (1986)) (internal

quotation marks omitted). To be actionable under a hostile work environment theory, sexual harassment by a supervisor must be unwelcome, based on sex, and so severe or pervasive that a reasonable person would find it, and the victim did find it, hostile or abusive. <u>Harris</u>, 114 S. Ct at 371; <u>Brown v. Hot, Sexy and Safer Productions, Inc.</u>, 68 F.3d 525, 540 (1st Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1044 (1996); <u>Reid v. Brighton</u>, No. 92-629-M, slip op. at 8 (D.N.H. Nov. 8, 1993).

A.  <u>Same-Sex Sexual Harassment</u>

The court begins its analysis by noting the split among the federal courts on the issue of same-sex sexual harassment. <u>See, e.g.</u>, <u>Williams v. District of Columbia</u>, 916 F. Supp. 1, 7-8 (D.D.C 1996) (collecting appeals and district court cases from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh, and District of Columbia Circuits directly or indirectly recognizing the actionability of same-sex sexual harassment under Title VII, and appeals and district court cases from the Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh Circuits finding same-sex harassment beyond the reach of Title VII). The court also notes that in <u>Morgan v. Massachusetts General Hosp.</u>, 901 F.2d 186 (1st Cir. 1990), the First Circuit entertained a male plaintiff's claim that he had been sexually harassed by a

7

male worker before affirming the district court's conclusion that the conduct alleged, even if proven, was not sufficiently pervasive to violate Title VII.  Id. at 192-93.

The court's canvassing of the issue reveals little support for the sweeping proposition advanced by the defendants that same-sex hostile working environment claims are not actionable under Title VII.  Indeed, neither the text of Title VII nor the Supreme Court's recognition of a cause of action based on a hostile working environment places a restriction on the gender of the discriminator.  Accord Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 751 (4th Cir. 1996) (Niemeyer, J.) (section of opinion not joined by concurring judges).  Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 114 S. Ct. at 372 (Ginsburg, J,, concurring).  Thus, a male employer who exposes a male employee to disadvantageous terms or conditions of employment -- such as by creating a hostile working environment -- because the employee is male or who exposes a female employee to disadvantageous terms or conditions of employment -- such as by creating a hostile working environment -- because she is female violates Title VII.

8

Of course, the mere fact that a male employer has engaged in sexual innuendo or in conduct with sexual overtones with a male employee does not compel the conclusion that the employer exposed the employee to a disadvantageous term or condition of employment because of the employee's sex. See Hopkins, 77 F.3d at 745. Same-sex harassment, like male-to-female or female-to-male harassment, may be motivated by reasons other than an employee's gender. See id. However, this issue, like the other elements that make up a Title VII claim based on a hostile working environment, are for the trier of fact to decide.

Here, the defendants' motion for summary judgment fails to demonstrate the lack of a genuine issue of material fact concerning the motivation behind Hamill's conduct. Although the defendants have argued that Hamill is not a homosexual and that his behavior toward the plaintiff was merely workplace banter, the very nature of the conduct alleged raises the inference that Hamill directed his behavior at the plaintiff because he was male. See, e.g., complaint ¶¶ 19 ("Defendant Hamill told another employee to leave the room because he wanted to engage in homosexual fellatio with the Plaintiff."), 20, ("Defendant Hamill told Plaintiff that he had given him a "good blow job."), 22 ("Defendant Hamill made obscene gestures towards Plaintiff indicating a desire or intention to engage in a sexual act with

9

his penis."). As such, summary judgment is not warranted on this ground.

B.   The Unwelcomeness of the Conduct

The defendants support their claim that Hamill's conduct was not unwelcome to the plaintiff by citing numerous examples of the plaintiff's active participation in the sexual innuendo, both homosexually and heterosexually oriented, that appears to have been common within the department of public works. However, the deposition and affidavit testimony cited by the defendants, which describes the plaintiff's participation in sexual innuendo with his co-workers, does not indicate that the plaintiff welcomed such conduct from his supervisor. The "[p]laintiff's use of foul language or sexual innuendo in a consensual setting," although potentially relevant to the issue of whether he found the conduct in question offensive, "does not waive [his] legal protections against unwelcome sexual harassment." Burns v. McGregor Electronic Indus., Inc., 989 F.2d 959, 963 (8th Cir. 1993) (quotation marks omitted). Considering the question of unwelcomeness from the perspective of both the plaintiff and Hamill, see Lipsett v. University of Puerto Rico, 864 F.2d 881, 898 (1st Cir. 1988), and in a manner consistent with Rule 56, the court finds that the defendants have failed to establish the lack

10

of a genuine issue of material fact concerning the unwelcomeness of Hamill's conduct, and declines to grant summary judgment to the defendants on this ground.

C.    Hostility and Abusiveness of the Environment

A party asserting that a work environment violates Title VII must demonstrate that the "the environment would reasonably be perceived, and is perceived, as hostile or abusive."  Harris, 114 S. Ct. at 367.  The Court has explained that

> whether an environment is "hostile" or abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id.

Here, the defendants contend that the sporadic nature of the conduct alleged, the plaintiff's own participation in sexual banter, and the plaintiff's military service belie the assertion that a reasonable person would, and the plaintiff did, perceive his working environment as hostile or abusive.  The argument is unavailing.  The plaintiff's complaint includes allegations that Hamill made comments and gestures to the planitiff in front of co-workers suggesting that the plaintiff and Hamill had engaged in sexual conduct in the past, and that Hamill wanted to engage

11

in sexual conduct with the plaintiff in the future.  To the extent Hamill acted in the way that he did toward the plaintiff on account of the plaintiff's sex, the court finds Hamill's behavior sufficiently severe and humiliating to allow a reasonable finder of fact to conclude that the plaintiff was subjected to a hostile working environment.  Such conduct, if undertaken on the basis of sex, creates demeaning stereotypes about males to which females would not be exposed, and creates precisely the type of "arbitrary barrier[s] to sexual equality at the workplace" that Title VII was designed to eradicate. Meritor, 477 U.S. at 67 (quoting Henson v. Dundee, 682 F.2d 897, 902 (11th Cir. 1982)).

The defendant's motion for summary judgment on the plaintiff's sexual harassment claim is denied.

II.  Retaliation

The defendants argue that summary judgment is warranted on the plaintiff's retaliation claim -- i.e., his claim he was disciplined because he complained to Hauger about Hamill's conduct -- because the plaintiff has adduced no evidence suggesting a causal relationship between the two events.  The plaintiff argues that the requisite causation can be inferred

12

from the temporal proximity of the two events and the pretextual nature of the defendants' decision.

Title VII provides that

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a) (West 1994). To state a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate

[f]irst, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and, third, a causal connection between the first two elements[,] that is[,] a retaliatory motive playing a part in the adverse employment actions.

Petitti v. New England Tel. & Tel. Co., 909 F.2d 28 (1st Cir. 1990) (quoting Grant v. Bethlehem Steel Corp., 622 F.2d 43 (2d Cir. 1980)). Once a plaintiff states a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. Pettiti, 909 F.2d at 31; see also Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991) (ADEA retaliation claim), cert. denied, 504 U.S. 985 (1992). If the defendant meets this burden, the burden shifts back to the plaintiff to establish that the

13

defendant's justification is pretextual, and that retaliation is the "real" reason for an adverse employment decision. Mesnick, 950 F.2d at 827; see also Hoeppner v. Crotched Mountain Rehab. Ctr., 31 F.3d 9, 17 (1st Cir. 1994) ("[E]vidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." (quoting Morgan, 901 F.2d at 191 (alteration in original))). At this stage, the plaintiff is not aided by a presumption of retaliation. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993) (presumption drops out of discrimination claim after employer proffers legitimate nondiscriminatory justification); Mesnick, 950 F.2d at 824-25 (same).

The court finds that the plaintiff has failed to establish a causal link between his allegations of sexual harassment and the disciplinary action taken against him, regardless of whether this inquiry is undertaken at the third stage of the plaintiff's prima facie case or following the defendants' proffer of a legitimate justification for the suspension. The deposition testimony to which the plaintiff points merely calls into question the veracity of the defendants' justification for disciplining him, and does not provide "names, dates, incidents, and supporting facts . . . giving rise to an inference of discriminatory

14

animus." <u>Hoeppner</u>, 31 F.3d at 14, 17 (quoting <u>Lipsett</u>, 864 F.2d at 895).[4] Further, the five-month delay between the lodging of the plaintiff's complaint and the disciplinary action taken undermines the plaintiff's claim that the temporal proximity of the events, standing alone, establishes a causal link between them. <u>See, e.g.</u>, <u>Balletti v. Sun-Sentinel Co.</u>, 909 F. Supp. 1539 (S.D. Fla. 1995) (holding that a six-month interval between complaint and discharge could not support an inference of causal connection, and cataloguing cases holding that intervals of as little as three months, standing alone, cannot support such an inference). <u>Compare</u> <u>Wyatt v. City of Boston</u>, 35 F.3d 13, 16 (1st Cir. 1994) (causation element satisfied where complaint and adverse action occurred nearly simultaneously). The court grants the defendants' motion for summary judgment on the plaintiff's retaliation claim.

---

[4]The plaintiff cites <u>Rowlett v. Anheuser-Busch, Inc.</u>, 832 F.2d 194, 202 (1st Cir. 1987) for the proposition that where an employee who files a discrimination complaint has performed satisfactorily, it is permissible to infer that an adverse employment decision taken as long as nine months after the complaint is retaliatory. The plaintiff's argument is unavailing because the plaintiff was not disciplined for unsatisfactory performance, but, rather, for destroying town property and insubordination. Moreover, the plantiff's position contravenes more recent First Circuit precedent. Although an employee's satisfactory performance may undermine an employer's claim that poor performance is the reason for the adverse employment decision, it does not provide affirmative proof that the real reason for the decision was retaliatory. <u>See</u> <u>Hoeppner</u>, 31 F.3d at 17.

15

III.  <u>First Amendment</u>

The plaintiff has conceded that summary judgment is warranted on his First Amendment claim.  Accordingly, the court grants summary judgment to the defendants on count 3 of the plaintiff's complaint.

IV.  <u>Due Process</u>

Assuming <u>arguendo</u> that the plaintiff had a property interest in his employment and that the disciplinary action taken against the defendant constituted a deprivation of that interest, the defendants contend that summary judgment is warranted on the plaintiff's due process claim because the appeal procedure available to the plaintiff satisfied the requirements of the Due Process Clause.  The plaintiff disputes this assertion, claiming that Vermilya's refusal to compel the production of witnesses, to open the hearing to the public, to permit transcription of the proceedings, and to recuse himself from the appeal deprived the plaintiff of his right to a constitutionally sufficient hearing.

"The basic purpose of the constitutional requirement [of due process] is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Cotnoir</u>

16

v. University of Maine Sys., 35 F.3d 6, 10 (1st Cir. 1994) (quoting Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991)) (quotation marks omitted). In determining whether the deprivation of a protected interested comports with due process, a court must consider

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 325 (1976).

The court has considered these factors and finds that the appeal procedure available to the plaintiff afforded him more than ample opportunity to be heard. Significantly, the sanction the plaintiff sought to appeal was merely a one-week suspension followed by probation. Although the plaintiff argues that his suspension could eventually have led to a dismissal, the fact remains that the plaintiff was not dismissed, and was not entitled to process commensurate with a dismissal proceeding. Further, the record indicates that, had he attended the hearing, the plaintiff and his counsel would have been able to present his side of the story, call his own witnesses, and cross-examine his accusers. The court finds that the absence of the additional

17

procedural safeguards requested by the plaintiff does not render the proceeding constitutionally infirm. Accord Workman v. Jordan, 32 F.3d 475, 480 (plaintiff's inability to subpoena witnesses at posttermination hearing did not offend due process) (10th Cir. 1994), cert. denied, 115 S. Ct. 1357 (1995); Gorman v. University of Rhode Island, 837 F.2d 7, 15-16 (1st Cir. 1988) (denial of student's request to tape record disciplinary hearings not actionable where factfinder was required to make written summary of testimony and issue written decision); Linwood v. Board of Educ., 463 F.2d 763, 770 (7th Cir.), cert. denied, 409 U.S. 1027 (1972) (student not entitled to public expulsion hearing).[5]

The court also finds that the plaintiff has failed to demonstrate a risk of actual bias or prejudgment on the part of Vermilya sufficient to overcome the presumption that the plaintiff would have received a fair hearing. Braslett v. Cota, 761 F.2d 827, 837 (1st Cir. 1985); see also Gorman, 837 F.2d at 15. The plaintiff's allegations of bias and prejudgment are

_____

[5]To the extent the plaintiff supports his federal due process claim by asserting procedural rights guaranteed by the New Hampshire right-to-know statute, N.H. Rev. Stat. Ann. § 91-A, the court finds that he has failed to state a claim. See, e.g, Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional claim."), cert. denied, 434 U.S. 1077 (1978).

18

based solely on Hauger's admission that he approached Vermilya on two separate occasions "to make sure [he] was on good footing" concerning the proposed disciplinary action against the plaintiff, and a meeting attended by Vermilya, the plaintiff, and the plaintiff's co-workers, during which Vermilya expressed his support for Hamill and stated that Hamill's sexual innuendo was merely "shop talk." However, the record belies the plaintiff's claim that these incidents reflect evidence of Vermilya's bias against the plaintiff or prejudgment of his case. Indeed, Hauger's testimony describing his conversations with Vermilya indicates that Vermilya "could not give [Hauger] too much information" about the propriety of disciplining the plainitff "because of [Vermilya's] obvious position." Further, the support Vermilya voiced for Hamill related only to employee complaints of sexual harassment, and not to the incidents for which the plaintiff was disciplined. The plainitff's claims of bias are too attenuated to overcome the presumption that he would have received a fair hearing.

The court grants the defendants' motion for summary judgment on the plaintiff's due process claim.

## Conclusion

The defendants' motion or summary judgment on the plaintiff's federal claims (document no. 24) is denied in part and granted in part.  The clerk shall schedule a status conference.

SO ORDERED.

 

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 17, 1996

cc:  K. William Clauson, Esquire
     Charles P. Bauer, Esquire