Bruce H. KING, Plaintiff—Appellant,

v.

**TOWN OF HANOVER, Defendant— Appellee.**

**No. 96–2144.**

United States Court of Appeals, First Circuit.

Heard April 10, 1997.

Decided June 30, 1997.

---

966

K. William Clauson, Hanover, NH, for plaintiff–appellant.

Charles P. Bauer, with whom John T. Alexander and Ransmeier & Spellman Professional Corporation, Concord, NH, were on brief, for defendant–appellee.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and SARIS,* District Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellant Bruce King ("King") worked for the Hanover Department of Public Works ("DPW") as a heavy equipment operator and truck driver. King was supervised by Leo Hamill ("Hamill") from July 1991 onward. Hamill's immediate supervisor was Richard Hauger ("Hauger"). In March 1993, Hauger informed King that he had decided to take disciplinary action for incidents in which King was alleged to have destroyed town property. King was suspended for one week without pay and placed on probation for ninety days. After receiving notice of the suspension and probation, plaintiff did not return to work.

In May 1993, King exercised his right, under the DPW's personnel policy manual, to appeal the disciplinary action to the Town Manager. A hearing was scheduled for May 26. King requested that the hearing be open to the public, that the Town produce certain witnesses to testify, that the Town record the hearing or permit a court reporter to do so at King's expense, and that the town manager, defendant Clifford Vermiya, excuse himself from the proceedings based on a conflict of interest. When all of these requests were denied, King chose not to participate.

On July 21, 1993, King filed a bill of equity in the Grafton County Superior Court seeking reinstatement, back pay, and damages. The Superior Court granted the Town's motion to dismiss. On appeal to the New Hampshire Supreme Court, certain state law tort claims were reversed and remanded. *King v. Town of Hanover*, 139 N.H. 752, 661 A.2d 228 (1995). The state litigation was then stayed pending resolution of this federal action, which King filed in May 1994. On May 17, 1996 the district court granted summary judgment on King's retaliation claim and his due process claim. *See King v. Town of Hanover*, 959 F.Supp. 62 (D.N.H.1996). On June 20, 1996, the district court granted summary judgment on King's wrongful discharge claim, Order of the District Court,

June 20, 1996 (unpublished), and, on July 12, 1996, summary judgment was granted on his breach of contract claim, Order of the District Court, July 12, 1996 (unpublished). The remaining claims, for sexual harassment and for intentional infliction of emotional distress, were tried before a jury in August 1996. The jury returned a verdict for the defendants.

Before us today is an appeal from the district court's summary judgment rulings as to King's retaliation claim, due process claim, wrongful discharge claim, and breach of contract claim. We affirm.

## I. Background

The dispute centers around a series of events, which we summarize briefly. King received favorable evaluations from Hamill in both 1991 and 1992. King claims that Hamill created a hostile and offensive sexual atmosphere in the workplace by "repeatedly ma[king] sexually suggestive, socially inappropriate and offensive comments in an effort to engage Plaintiff in conversations and interactions of an inappropriate and sexual manner." Complaint ¶ 18. Furthermore, King alleges that Hamill's behavior indicated that he thought King was homosexual or interested in engaging in homosexual activity with Hamill. As a result, King claims to have suffered "severe embarrassment, a high level of stress, and personal sense of humiliation." Complaint ¶ 24.

In October 1992, King complained to Hauger about Hamill's behavior and requested reassignment. No action was taken.

The Town claims that disciplinary action was taken against King in response to three work-related incidents. First, in December 1992, King drove a town truck, with its body elevated, into the town garage, causing $900 in damage to the truck. In February 1993, King's truck slid off the road during a snowstorm. Finally, in March 1993, several granite posts were damaged in an area where King had been instructed to push back snow. King denied breaking the posts, but the Town argued that he was responsible for the damage.

* Of the District of Massachusetts, sitting by designation.

## II. Retaliation Claim

King claims that the Town disciplined him in retaliation for his October 1992 complaint to Hauger. Title VII provides that:

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

To prevail, King must meet the familiar *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must come forward with a prima facie showing of retaliation. *See id.* at 802, 93 S.Ct. at 1824; *Mesnick v. General Electric Co.,* 950 F.2d 816, 827 (1st Cir.1991). The burden of production then shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for the adverse employment action. The production of such a nondiscriminatory reason dispels the presumption of improper discrimination generated by the prima facie showing of discrimination. *Id.* The plaintiff then must show that the proffered reason is actually a pretext for retaliation. *Id.* at 823.

In order to state a *prima facie* case, the plaintiff must show (1) that he engaged in an activity protected under Title VII or engaged in protected opposition to an activity, which participation or opposition was known by the employer; (2) one or more employment actions disadvantaging him; and (3) a causal connection between the protected activity and the employment action. *See Hoeppner v. Crotched Mountain Rehabilitation Center,* 31 F.3d 9, 14 (1st Cir.1994); *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990).

We agree with the district court's ruling that King has failed to establish a sufficient causal link between his allegations of sexual harassment and the disciplinary actions taken against him.

As we are reviewing the district court's ruling on summary judgment, we view the facts in the light most favorable to the non-movant, King. *See Smith v. F.W. Morse & Co.,* 76 F.3d 413, 428 (1st Cir.1996). We need not, however, grant credence to "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). In order to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory. This evidence must "have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989).

In his appellate brief, King fails to point to any evidence that the employment activity was retaliatory. King's argument regarding causation amounts to the following. In October 1992, King complained to Hauger regarding Hamill's behavior toward him. No record was kept of this complaint. King claims that the incidents for which King was disciplined were a pretext for retaliation, and the complaint was close in time to the disciplinary action. Although King produced depositions and affidavits of witnesses to challenge the appropriateness of the disciplinary action, this evidence contesting the factual underpinnings of the reasons for the discipline, without more, is insufficient to present a jury question regarding the retaliation claim. *See Hoeppner v. Crotched Mountain Rehab. Center, Inc.,* 31 F.3d 9, 17 (1st Cir. 1994). It is insufficient for King to simply recount that he complained and that he was disciplined five months later. He must offer sufficient evidence of discrimination for a rational factfinder to find in his favor. In this case, he offers no such evidence.

## III. Procedural Due Process [1]

King alleges that the disciplinary proceedings afforded him were insufficient and "de-

---

1. The Supreme Court recently decided a similar case, *Gilbert v. Homar,* —— U.S. ——, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), in which an employee at a state university in Pennsylvania was

nied his due process right to a fair hearing on disciplinary charges in violation of 42 U.S.C. § 1983." Appellant's Brief, at 17. Specifically, King claims that he had a right to hire a certified court reporter at his own expense to transcribe the sworn testimony at the hearing.

After receiving the Town's disciplinary letter, King appealed, as was his right under the Personnel Policy Manual. The Town Manager scheduled a hearing, though he refused King's request that the hearing be public and that the Town produce certain town employees to testify. King, represented by counsel, arrived at the hearing with a certified court reporter, brought at his own expense. When the Town Manager refused to allow the reporter to record the hearing, King refused to participate in the hearing. The Town treated the appeal as withdrawn.

In order to succeed on his due process claim under section 1983, King must show that he has been deprived of a constitutionally protected liberty or property right. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 53 (1st Cir.1990). Although King fails to identify the precise interest that he believes has been violated, our reading of his brief and the record suggests that he claims a deprivation of a protected property interest.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the Supreme Court stated that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709.

 It is well established that a public employee has a constitutionally protected property interest in his continued employment when he reasonably expects that his employment will continue. *Cummings v. South Portland Hous. Auth.*, 985 F.2d 1, 2 (1st Cir.1993). An employee who can only be dismissed for cause has such an expectation. *Id.* An at-will employee, however, has no reasonable expectation of continued employment. *Id.* Whether an employment contract allows dismissal only for cause is a matter of state law. *Id.*

 New Hampshire law is clear. "[P]ublic employment is not a constitutionally protected property right of the employee." *Appeal of Parker*, 121 N.H. 986, 988, 437 A.2d 283 (1981); *Colburn v. Personnel Comm'n*, 118 N.H. 60, 64, 382 A.2d 907 (1978); *see also Soltani v. Smith*, 812 F.Supp. 1280, 1292 (D.N.H.1993). King did not have a contract with the Town. He was an at-will employee who could be dismissed at any time. He had, therefore, no protected property interest in his employment.

King suggests that the Hanover Department of Public Works ("DPW") personnel policy manual granted him the status of an employee that can be terminated only for cause, and only after the completion of certain procedural steps. It is possible that this manual restricted the ability of the Town to discipline or terminate King. *See Cummings*, 985 F.2d at 2. Assuming, *arguendo*, that King is correct in this view, he still cannot prevail because the Town provided all of the process due under the manual. King was entitled to, and received, a hearing. He complains that he was denied his "right to hire a certified court reporter at his own expense," Appellant's Brief at 17, his right to a public hearing, and his right to have the Town produce certain town employees as wit-

suspended without pay. That case does not govern our decision today, however, because in *Homar* the Court assumed, without deciding, that the protections of the due process clause extend to the suspension of a tenured public employee.

*Id.* at ——, 117 S.Ct. at 1811. In our case, King is an at-will employee, rather than a tenured employee, and as such he does not have due process protections against a one week suspension followed by 90 days probation.

nesses. Nothing in the policy manual, however, provides that an employee subject to disciplinary action short of dismissal is entitled to these procedures.

## IV. Wrongful Discharge

King also alleges that he has been wrongfully discharged, a common law violation under New Hampshire law. *See Wenners v. Great State Beverages,* 140 N.H. 100, 663 A.2d 623 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 926, 133 L.Ed.2d 854 (1996).

██ Whatever else may be required to prevail on a wrongful discharge claim, the plaintiff must have been actually or constructively discharged. King was not. He was suspended for one week without pay and placed on ninety days probation. *King,* 959 F.Supp. at 64. The district court noted that "[a]lthough the plaintiff argues that his suspension could eventually have led to a dismissal, the fact remains that the plaintiff was not dismissed..." *Id.* at 69.

It is conceivable that King could have saved this claim by arguing that he was constructively dismissed. We need not probe this point, however, for he has not advanced this argument. We therefore affirm the district court's grant of summary judgment on the wrongful discharge claim.

## V. Contract Claim

██ Finally, King attempts to avoid summary judgment on his contract claim. King's appellate brief offers virtually no argument with respect to this claim. Beyond a few lines of introduction, his argument, in its entirety, is as follows:

> Mr. King's constitutional [due process] and contractual claims that he was denied a fair disciplinary hearing are similar, but are not identical.
>
> Even if the Town may deny him a court reporter and a public hearing as a matter of constitutional law, these are clear rights under New Hampshire law and therefore should have been provided under his contractual right to a fair hearing. The common law of contracts holds that a contract should be construed to incorporate the law. 17A Am.Jur.2d, Contracts § 346 and § 381

> ("[I]t is commonly said that all existing ... applicable ... statements ... at the time a contract is made become part of it and must be read into it.").

Appellant's Brief, at 41.

██ It is an established appellate rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.... It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.... Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Willhauck v. Halpin,* 953 F.2d 689, 700 (1st Cir.1991) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990)); *see also Ramos v. Roche Prods.,* 936 F.2d 43, 51 (1st Cir.1991) (brief must contain full statement of issues presented and accompanying arguments); *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 375 (1st Cir.1991) (mere mention, without supporting argumentation, that party seeks review of a district court's ruling is insufficient to raise issue on appeal); *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 353 (1st Cir.1989) (same).

Accordingly, we find King's contract claim to be waived. He has failed to present any argumentation in support of his claim, and, indeed, has not even stated his contract claim in a manner that we can understand and analyze without guesswork.

## VI. Conclusion

For the foregoing reasons, we *affirm* the ruling of the district court.