Toomire v. Town & Country          CV-01-24-B      01/31/02

UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE


**Michael P. Toomire**

   **v.**                              Civil No. 01-24-B
                                       **2002 DNH 034**
**Town & Country Janitorial**
**Services, Inc.**


                   MEMORANDUM AND ORDER

   Michael Toomire filed a complaint against her former

employer, Town & Country Janitorial Services, Inc., Town &

Country's owner and president, Daniel Thompson, and co-owner Paul

Thompson.  Toomire bases her claims on Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and

New Hampshire state law.  On March 30, 2001, I dismissed

Toomire's Title VII claims against Daniel Thompson and Paul

Thompson, her claims based on N.H. Rev. Stat. Ann. § 354-A, and

her wrongful discharge claim.  Toomire's remaining claims are

against Town & Country, and include sexual harassment and

retaliation under Title VII, and breach of contract.  Town &

Country challenges these remaining counts in a motion for summary

judgment.

# I.  BACKGROUND[1]

Town & Country performs janitorial services for commercial clients and provides water and fire restoration services.  In 1992, Toomire began working at Town & Country on a part-time basis after being recruited by Paul Thompson.  Toomire worked primarily in sales, with some customer service responsibilities.  Thompson served as Toomire's supervisor.

Toomire began a consensual romantic relationship with Thompson in 1993.  Shortly thereafter, Thompson moved into Toomire's home, and the two resided together for over a year.  Eventually, Thompson moved out, but the two continued their romantic relationship.

In 1995, Toomire left Town & Country to find a job with benefits, but returned to Town & Country in the spring of 1996 as a full-time employee.  After negotiating the terms of her employment with Thompson and Town & Country's president, Daniel Thompson (Paul Thompson's brother), Toomire agreed to return to

---

[1] I construe the evidence in the light most favorable to Toomire, the non-moving party, and draw all reasonable inferences in her favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001) (explaining the operation of Fed. R. Civ. P. 56) (citation omitted).

Town & Country with a flexible schedule that allowed her: time off to care for her severely ill child; a fixed salary; commissions; medical insurance; vacations and holidays; 10% equity in the company at the end of Toomire's first year of employment; a credit for laundry services; automobile expense reimbursement; use of a company vehicle; and a cellular telephone. Toomire's responsibilities included customer service, sales, marketing, human resources, and quality management. Thompson continued to serve as Toomire's supervisor.

Thompson directed work-related threats at Toomire throughout their relationship, and used Toomire's employment at Town & Country to coerce her to have sexual relations with him. For example, Thompson told Toomire that she would be fired if she did not have a personal relationship with him, stating "I hired you. I'll fire you." On numerous occasions, Toomire complained to the company president, Daniel Thompson, about Thompson's behavior. Specifically, Toomire complained that Thompson yelled, cursed, "got in her face" at work, and threatened to terminate her employment. Toomire did not, however, complain of any sexually inappropriate behavior on Thompson's part because she felt ashamed.

In response, Daniel Thompson told Toomire that Thompson did not have the authority to fire her. On at least one occasion, Daniel Thompson responded to Toomire's complaints about Thompson's behavior by saying, "Don't worry about it. You know what he's like." In addition, Daniel Thompson once told Toomire, "My brother has abused every woman who has walked through the door. You could go away, the business could close, but my brother will always be my brother." Daniel Thompson also once witnessed Thompson tell Toomire that he had an "attitude problem...when [he] had to deal with bitches like [her]," but did nothing in response. Toomire reasonably believed that Thompson had sufficient control over his brother to bring about her termination.

Toomire ended her romantic relationship with Thompson in October 1997, but admits to having sexual intercourse with him on at least two occasions between October 1997 and February 1998. Additionally, she spent a weekend with Thompson in Chatham, Massachusetts, in January 1998. Toomire claims she saw Thompson outside of work to alleviate the hostile work environment at Town & Country, and because she feared that she would lose her job if she refused.

Thompson's inappropriate behavior in the workplace continued after Toomire terminated her personal relationship with him. Between October 1997 and March 1998, Thompson directed unwelcome sexual advances at Toomire, including grabbing her breasts, touching her legs and crotch, exposing his genitals, and asking for oral sex. Toomire asked Thompson to stop but did not report the sexual conduct to Daniel Thompson, as she continued to be embarrassed. In December 1997, Daniel Thompson began acting as Toomire's supervisor.

On March 5, 1998, Thompson assaulted Toomire in the Town & Country breakroom. Thompson slammed his chest into Toomire, causing her to hit the door with her right shoulder and upper arm. Toomire immediately reported the altercation to Daniel Thompson. Toomire visited the Columbia Portsmouth Regional Hospital later that day and was diagnosed with a right shoulder contusion and right neck trapezius strain. In a follow-up visit, Toomire was diagnosed with a separated shoulder and referred to an orthopedic specialist.

On March 10, 1998, Toomire reported the assault to the Greenland Police Department and filed a Domestic Violence Petition against Thompson with the Portsmouth Family Court.

After a March 12, 1998 hearing, a final domestic violence restraining order was issued which precluded Thompson from working at the Town & Country office where he would be in contact with Toomire. After the restraining order was issued, Town & Country unilaterally reduced Toomire's work hours and eliminated or significantly reduced many of her former responsibilities. Toomire also was precluded from communicating with employees and her computer access was restricted.

On March 19, 1998, Thompson filed a motion to amend the final restraining order, arguing that the portion of the order which prohibited him from entering Toomire's place of employment was unduly burdensome to him and Town & Country. Toomire refused to accede to the granting of the amendment, even though Daniel Thompson threatened to fire her if she did not. On April 23, 1998, the court held a hearing and subsequently issued an order modifying the restraining order to allow Thompson limited access to the Town & Country offices. The amendment required Toomire to work Monday through Friday from 9:00 a.m. to 4:30 p.m., and allowed Thompson access to the office between 5:00 p.m. and 8:30 a.m.

On April 24, 1998, Toomire found her business cards in the waste basket when she arrived at work. Later that day, Daniel Thompson asked Toomire to turn in her pager. He also told her to leave the Town & Country offices after he had a disagreement with her about her use of a particular telephone. Toomire did not return to Town & Country during the following three business days, and on April 30, 1998, Daniel Thompson mailed her a letter notifying her that she had been terminated.

Toomire alleges that Town & Country violated Title VII by allowing her to be sexually harassed at her place of employment. More specifically, she alleges both that Town & Country made submission to Thompson's conduct a condition of her employment and that she was forced to work in a hostile work environment. As a result, she claims to be the victim of both *quid pro quo* and hostile work environment harassment. Toomire also alleges that Town & Country violated Title VII's anti-retaliation provision when it reduced her job responsibilities and ultimately terminated her employment after she opposed Thompson's harassment.

Toomire further charges that Town & Country has in several respects breached an employment contract that existed between

them. Under the terms of her employment, Toomire states that she was entitled to commissions on certain sales and renewal contracts, and that Town & Country still owed her some of these commissions at the time of her discharge. Similarly, Toomire states that Town & Country agreed to give her a 10% ownership interest in the business at the end of her first full year of employment. Finally, Toomire alleges that Town & Country breached her employment contract by firing her without following the progressive discipline procedures outlined in its employee manual.

On July 29, 1998, Toomire filed a charge of discrimination with the New Hampshire Commission for Human Rights ("NHCHR"), and with the Equal Employment Opportunity Commission ("EEOC"). On October 21, 2000, Toomire received a right-to-sue letter from the EEOC. On January 17, 2001, Toomire commenced this action. Defendants subsequently filed a motion for judgment on the pleadings. On March 30, 2001, I issued an order dismissing Toomire's Title VII claims against Daniel Thompson and Paul Thompson, her claims based on N.H. Rev. Stat. Ann. § 354-A, and her wrongful discharge claim. Town & Country now moves for summary judgment on Toomire's remaining claims against it under

Title VII and state law.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-movant.  See Navarro, 261 F.3d at 94 (citation omitted).  The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion,

the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323). While courts must exercise restraint in granting summary judgment in cases where the nonmoving party must prove "elusive concepts such as motive or intent . . . . summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994) (citations and internal quotation marks omitted). I apply this standard in resolving the defendant's motion for summary judgment.

## III.  DISCUSSION

### A.  Toomire's Sexual Harassment Claim

Town & Country argues that it is entitled to summary judgment on Toomire's Title VII sexual harassment claim because there are no genuine issues of material fact in dispute, and, as

a matter of law, Toomire's claim is inadequate.  Specifically, Town & Country submits that "Toomire suffered no unwelcome sexual harassment from Paul Thompson as Toomire and Paul Thompson were engaged in a long term voluntary consensual sexual relationship." Defendant's Motion for Summary Judgment at 3.  Town & Country's argument fails.

Town & Country relies upon Campbell v. Masten, 955 F. Supp. 526 (D. Md. 1997), to support the proposition that Toomire has no basis for a Title VII sexual harassment claim because she at one time had a consensual sexual relationship with Thompson. Campbell is readily distinguished, however, as the plaintiff therein complained neither of a hostile work environment nor that submitting to unwanted sexual conduct was made a condition of her employment.  See Campbell, 955 F. Supp. at 529-30.  The court noted, "negative employment actions which follow on the heels of a consensual relationship gone sour do not constitute *quid pro quo* sexual harassment *unless they are linked in some way to other or further 'unwanted' sexual advances*."  Id. at 530 (emphasis added).

Here, in contrast, Thompson directed such "other or further 'unwanted' sexual advances," id., toward Toomire "anywhere from a

couple of times a day to multiple times a week."  These advances occurred both during their consensual relationship, and after Toomire terminated the relationship.  Thompson's advances consisted of grabbing Toomire's breasts, touching her legs and crotch, exposing his genitals and asking for oral sex, and responding to work related requests by pulling down the zipper of his pants, holding his penis in his hands and making explicit sexual comments.  Thompson also directed work-related threats at Toomire, and used his supervisory status to coerce her into having sexual relations with him.  Moreover, Thompson's conduct was physically threatening, and culminated in a physical assault on Toomire that required her to seek medical attention.

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986).  The First Circuit has defined unwelcome advances as "uninvited and offensive or unwanted from the standpoint of the employee." Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 784 (1st Cir. 1990).  Submission to unwanted sexual advances does not eviscerate unwelcomeness.  See Matthew Bender, Employment Discrimination § 46.03[2][c] (2d ed. 2001); Meritor, 477 U.S. at 68.  Thus, Toomire and Thompsons'

-12-

personal relationship did not give Thompson unrestrained license to harass and threaten Toomire in the workplace.  See Babcock v. Frank, 729 F. Supp. 279, 287 (S.D.N.Y. 1990) (finding previous consensual sexual relationship did not bar Title VII sexual harassment claim based on unwelcome physical and verbal sexual advances).

Toomire complained to Daniel Thompson on several occasions, making it clear that Thompson's behavior was unwelcome.  See Lipsett v. Univ. of P.R., 864 F.2d 881, 898 (1st Cir. 1988) (stating that an inquiry into unwelcomeness includes whether the plaintiff gave clear signals that the behavior was unwanted). Due to her embarassment, Toomire did not specifically tell Daniel Thompson about Thompson's sexually inappropriate behavior, but she did complain about his abusive behavior in general, as well as his threats to terminate her employment.  Daniel Thompson acknowledged awareness of his brother's inappropriate behavior, but took no steps to remedy it.  If a jury accepts the facts given by Toomire as true, it could find that Thompson's behavior created a hostile work environment, see Lipsett, 864 F.2d at 897, and that Thompson made a sexual relationship with him a condition of Toomire's employment, see Burlington Indus., Inc. v. Ellerth,

-13-

524 U.S. 742, 751-52 (1998). Therefore, summary judgment in favor of Town & Country on Toomire's sexual harassment claim is not appropriate.

**B. <u>Toomire's Retaliation Claim</u>**

Town & Country next argues that Toomire's retaliation claim fails because prior to the date that Toomire's employment with Town & Country ended (April 24, 1998), she had not opposed an unlawful employment practice within the meaning of Title VII's anti-retaliation provision. First, Town & Country points out that Toomire had not filed a charge of discrimination with the EEOC before April 24, 1998. Next, it argues that although Toomire obtained a restraining order against Thompson after he assaulted her, obtaining a restraining order does not constitute protected activity under Title VII. Finally, Town & Country disputes Toomire's charge that she was fired from Town & Country, and instead says that she abandoned her job.

In relevant part, Title VII's anti-retaliation provision provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,

-14-

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Toomire must show by a preponderance of the evidence that: (1) she engaged in conduct protected by Title VII; (2) she suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity. White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000) (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). If Toomire establishes her prima facie case, the burden of production shifts to Town & Country, who must respond by articulating a legitimate, nondiscriminatory reason for the adverse employment action. See King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997). If Town & Country meets its burden of production, the presumption of retaliation falls away and Toomire must prove that Town & Country's explanation is actually a pretext concerning a retaliatory motivation. See id.

In her objection to Town & Country's motion for summary judgment, Toomire alleges that she engaged in protected activities when she complained to Daniel Thompson about his brother's behavior and when she filed a restraining order against

-15-

Thompson.  She further alleges that as a result of her participation in protected activities, her job duties were reduced, her hours were unilaterally changed, and she was ultimately terminated.

I conclude that Toomire has established a prima facie case of retaliation.  First, she engaged in protected activities when she complained to Daniel Thompson about Thompson's behavior in the workplace and when she obtained a restraining order from the Portsmouth Family Court.  See 42 U.S.C. § 2000e-3(a).  Toomire's complaints to Daniel Thompson about Thompson's intimidating and abusive behavior in the workplace unquestionably qualify as protected activity.  See White, 221 F.3d at 262 (internal complaint is protected activity).

Town & Country, however, argues that filing for a restraining order is not a protected activity taken in opposition to an unlawful employment practice under Title VII's anti-retaliation provision.  See 42 U.S.C. § 2000e-3 (protecting an employee from discrimination resulting ". . . because he has opposed any practice made an unlawful employment practice. . .").  Although legislative history casts no light on what employee activities Congress intended to cover in the retaliation

-16-

provision, courts have tended to focus "less on the opposing act than on its context. . . ." See Matthew Bender, Employment Discrimination § 34.03. The First Circuit has developed a balancing approach whereby the purpose of § 2000e-3(a), "to protect persons engaging reasonably in activities opposing . . . discrimination," is weighed against "Congress' desire not to unduly constrict employers in personnel decisions." Id. (citing Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976)). Viewed in this light, Toomire engaged in a reasonable activity opposing discrimination when she sought a restraining order in response to sexually based physical violence in her workplace. When Toomire's petition for a restraining order is considered in conjunction with her complaints to Daniel Thompson about Thompson's workplace behavior, a reasonable factfinder could determine that Toomire has met the first prong of her prima facie case.

Second, Toomire alleges that her job duties were reduced or eliminated subsequent to the issuance of the restraining order which prohibited Thompson from entering the Town & Country offices. More specifically, Toomire's contact with employees was restricted, she was prohibited from doing public relations, and

-17-

was denied access to the computer. Toomire further alleges that she was terminated just one day after the amended restraining order was issued. These changes in the condition of her employment constitute adverse employment actions. See White, 221 F.3d at 262 ("Adverse employment actions include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.") (citation and internal quotation marks omitted).

In order to complete her prima facie case, Toomire must "point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." King, 116 F.3d at 968; see Hoeppner v. Crotched Mountain Rehab. Ctr., Inc., 31 F.3d 9, 14 (1st Cir. 1994). "One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994). Immediately following the issuance of the March 12, 1998 restraining order, Toomire's responsibilities were reduced or eliminated. Furthermore, the amended restraining order was granted just one day prior to her termination. These

-18-

adverse actions were sufficiently close in time to Toomire's complaints to support causation.  See id.  For these reasons, Toomire has successfully met her burden of adducing trial-worthy evidence that her reduction in job duties and ultimate termination was causally connected to her complaints.

Toomire has met her initial burden, so the burden shifts to Town & Country to articulate a nondiscriminatory reason for the adverse employment actions.  See King, 116 F.3d at 968.  Although Town & Country has denied that any adverse employment action occurred, it has not articulated a legitimate, nondiscriminatory reason to rebut Toomire's charges.  Accordingly, its motion for summary judgment on her retaliation claim must fail.

## C.    Toomire's Breach of Contract Claim

### 1.    Unpaid Wage Claim - Commissions

Town & Country denies that it agreed to pay Toomire commissions on any sales or renewals after January 1, 1997.  It admits that before this date, it paid Toomire commissions, although Toomire, and both Thompsons "continually had an ongoing disagreement as to what contracts Toomire would receive commissions on."  Defendant's Motion for Summary Judgment at 21.  Town & Country argues that Toomire's claim to commissions is

-19-

barred by the statute of frauds, which applies <u>inter</u> <u>alia</u> to contracts that cannot be performed within one year. N.H. Rev. Stat. Ann. § 506:2. Based upon this doctrine, Town & Country argues that because Toomire has asked the court to award her the amount due on commissions she would have earned more than one year after she commenced her employment, any agreement between Town & Country and Toomire concerning commissions constitutes a contract that could not be performed within one year.

The short answer to Town & Country's claim is that the statute of frauds does not apply to Toomire's oral employment contract because, like all such at-will agreements, it is capable of being fully performed within one year through death or lawful termination by either party. See <u>Ives v. Manchester Subaru, Inc.</u>, 126 N.H. 796, 799 (1985); <u>Rosenthal v. Fonda</u>, 862 F.2d 1398, 1401 (9th Cir. 1988) (applying exception to commission agreement).

2. <u>Unpaid Wage Claim - Equity Interest</u>

Town & Country disputes Toomire's allegation that the terms of her employment entitled her to a 10% equity ownership interest in the business. Although both parties have asserted facts to support their respective positions, the outcome of this dispute

hinges upon whether a written document, signed by a Town & Country representative, exists. See N.H. R.S.A. 506:2 (requiring that for a contract to be enforceable, it must be in writing, or there must exist "some note or memorandum thereof," and "signed by the party to be charged or by some person authorized by him," unless performance could be completed within one year). Because Toomire would not have received the 10% equity interest until the end of her first year of full time employment with Town & Country, the agreement is subject to the statute of frauds.

In this case, a written document exists which fulfills the necessary criteria. In March 1998, Thompson found himself barred from the Town & Country premises pursuant to the restraining order obtained by Toomire. On March 19, 1998, Thompson filed a Motion to Amend Final Orders in the Portsmouth Family Court, asking the court to alter the terms of the restraining order to allow him access to Town & Country premises when Toomire was not at work. He referred therein to Toomire as "an employee and also a minority shareholder (10%) of Town & Country...the corporation which is owned and operated by the Defendant, Paul Thompson and his brother Dan[iel] Thompson." Defendant's Exhibit D (emphasis

-21-

added).[2]  The document is signed by Thompson's attorney, Celeste Biron.  It is apparent from affidavits and memoranda submitted by Town & Country that Thompson filed the motion because it was in Town & Country's interest.  Because Celeste Biron acted on behalf of both Thompson and Town & Country when she signed this document, it satisfies the statute of frauds.  I therefore deny Town & Country's request for summary judgment on Toomire's equity ownership claim.

3.    Toomire's At-Will Employment Status

Town & Country disputes Toomire's position that its employee manual altered the terms of her employment from that of an at-will employee, with the result that Town & Country breached an implied employment contract by terminating her without following the procedure detailed in the manual.[3]  Town & Country argues that no genuine issue of material fact exists regarding whether

---

[2]Neither party has cited this document in reference to this claim.  However, it qualifies as a "note or memorandum" of the equity ownership agreement between Toomire and Town & Country, and it is therefore appropriate that I rely upon it when analyzing the statute of frauds issue.

[3] The manual contains procedures for disciplinary action to be taken by Town & Country in response to prohibited conduct.  The manual states that Town & Country will issue a verbal warning and written notice before terminating an employee.

Toomire reasonably believed that the policy detailed in the employee manual constituted the terms of her employment.  I agree.

In <u>Panto v. Moore Business Forms, Inc.</u>, the New Hampshire Supreme Court discussed whether employee handbooks could alter the at-will status of employees by creating a contractual obligation on the part of employers to warn or to provide a hearing to employees before discharge.  <u>See</u> 130 N.H. 730, 737-40 (1988).  The court stated that New Hampshire law provides no basis for assuming that customary rules of contract formation would not be followed when analyzing cases involving employee handbooks.  <u>Id.</u> at 739.  It also noted that an employer could avoid the issue of altering the status of at-will employees by "announcing in the written policy itself that it was not an offer, or a policy enforceable as a contractual obligation."  <u>Id.</u> at 742; <u>see also</u> <u>Butler v. Walker Power, Inc.</u>, 137 N.H. 432, 435 (1993) (finding that an employee handbook did not alter terms of at-will employment status because employer had included a disclaimer).

In this case, Town & Country included a disclaimer in its employee manual specifically stating that it "does not alter the

fact that employment is 'at will' and may be terminated, with or without cause, by either party, at anytime." Town & Country's employee manual clearly states that it does not alter the terms of its employees' at-will status. Therefore, Town & Country was not obligated to issue Toomire a verbal or written warning before terminating her employment. Summary judgment in favor of Town & Country on this claim is appropriate.

## IV. CONCLUSION

I deny Town & Country's Motion for Summary Judgment (Doc. No. 16) with respect to Toomire's Title VII sexual harassment and retaliation claims, and her breach of contract claims pertaining to unpaid wages. I grant Town & Country's Motion for Summary Judgment with respect to the portion of Toomire's breach of contract claim where she argues that her employment status had been altered by an employee manual.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 31, 2002

cc: Jennifer A. Lemire, Esq.
Christopher W. Keenan, Esq.
Martha Van Oot, Esq.